BYRON D. SNELL *et al.*

*v.*

ELLEN J. SNELL *et al.*

*Filed at Ottawa January 19, 1888.*

1. MARRIED WOMEN—*power to enter into contracts—duties and obligations incident thereto.* Under existing legislation in this State, married women are placed upon a common footing with married men in respect to all property rights, including the means to acquire, protect and dispose of the same. They may own, buy, sell, transfer and convey any and all kinds of property, to the same extent as men or *femes sole,* and subject to no other or different conditions or restrictions.

2. The duties and obligations of married women in respect to their rights and powers are the same as those of others *sui juris.* They must perform their contracts, and are amenable to legal process to the same extent as if unmarried.

3. SAME—*reforming deed of married woman—for mistake.* If, in the execution of a deed by a married woman, a mistake occurs, a court of equity will correct it against her, the same as against any other person. So where a husband and wife executed and acknowledged a mortgage intended to be on their homestead, which, by mistake, was not properly described, and on bill against her and the husband's heirs, after his death, to reform the same, and for foreclosure, a decree was entered correcting the mistake and ordering a foreclosure, it was *held,* that the court had jurisdiction to reform the mortgage as against the wife, and that she was concluded by the decree, the same as any other person.

4. SAME—*deed by married woman—mode of its execution—compelling the making of a deed in proper form.* Any conveyance of a married man, good at common law, will pass his estate, whether his wife joins in its execution or not, or he acknowledges the same; but in the case of a married woman the statute requires that either the husband must join her in her deed, or, if executed by her alone, that it be acknowledged before an officer. This statute is mandatory, and if not complied with the deed will be invalid. In such a case, a court of equity will compel the delivery of a deed executed in proper form.

5. APPEAL—*whether a freehold involved—seeking to establish and set off a homestead.* A bill by a widow and heirs of a deceased owner of land, against a purchaser under a decree of foreclosure, seeking to establish and set off to them a homestead in the land, involves a freehold, and an appeal will lie from the final decree directly to this court.

APPEAL from the Circuit Court of La Salle county; the Hon. CHARLES BLANCHARD, Judge, presiding:

Mr. RECTOR C. HITT, for the appellants:

It was held in *Knox* v. *Brady*, 74 Ill. 476, that a mortgage on the husband's property could not be reformed as to the wife. This was based on the legal disabilities of the wife at that time. After the disability was removed, her contracts were valid, and may be reformed. Rev. Stat. 1874, p. 506, sec. 6.

Byron D. Snell should be subrogated to all the rights of the insurance company, under its mortgage. *Ebert* v. *Gerding*, 116 Ill. 216; *Young* v. *Morgan*, 89 id. 199.

Messrs. DUNCAN, O'CONNOR & GILBERT, for the appellees:

No freehold is involved in this suit. *Railroad Co.* v. *Watson*, 105 Ill. 222; *Mix* v. *King*, 66 id. 146.

An estate of homestead is not confined to lands held in fee, but embraces less estates. *Deere* v. *Chapman*, 25 Ill. 610; *Shackleford* v. *Todhunter*, 4 Bradw. 271; *Blue* v. *Blue*, 38 Ill. 9; *Watson* v. *Saxer*, 102 id. 585.

The law places the householder and his wife under an absolute disability to convey the homestead, except in strict conformity with the statute. This position is like that of a married woman prior to the act of 1869, whose deed could not be reformed. *Moulton* v. *Hurd*, 20 Ill. 127; *Spurck* v. *Crook*, 19 id. 415; *Martin* v. *Hargardine*, 46 id. 322; *Knox* v. *Brady*, 74 id. 477.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

On the 26th day of January, 1881, Philip Snell was the owner in fee of the land in controversy, and resided thereon, with his family, as a homestead. On that day he mortgaged the same to Jane Snell, to secure an indebtedness of $1839.87, his wife, Ellen J. Snell, joining in the deed. The land lay in *section 27*, but by mistake it was described as in *section 20*.

The mortgage contained a proper and formal release of the homestead, and was in every respect strictly accurate, except the error as to the number of the section. On the 9th day of February, 1884, Snell and wife executed to the Northwestern Mutual Life Insurance Company another mortgage upon the same land, by its proper description, to secure an indebtedness of $3000. This mortgage also contained a release of homestead, and was otherwise formal and correct. On the 16th of August, 1884, Snell died, leaving Ellen J. Snell, his widow, and two minor children, John and William Snell, his only heirs-at-law. On the 20th of October, 1885, Jane Snell filed a bill in the La Salle circuit court to correct her mortgage in respect to the erroneous number of the section, and to have the same foreclosed, making the widow and two minor children of Philip Snell, parties. The former made default, and the children answered in the usual way, by a guardian *ad litem,* no question being raised, the one way or the other, about the right of homestead. The court, on the hearing, entered a decree in conformity with the prayer of the bill. On the 1st of December, 1886, the master sold the premises, under the decree, to Byron D. Snell, and the same not having been redeemed within the time allowed by law, Snell received a master's deed therefor. On the 9th day of February, 1887, the widow and heirs of Philip Snell, the appellees herein, filed the present bill, claiming an estate of homestead in the premises, and prayed that the same be set off and assigned to them, as provided by law. The court, on the hearing, entered a decree in conformity with the prayer of the bill, and the defendants bring the case here by appeal.

Before proceeding to consider the merits of the controversy, it will be necessary to dispose of a preliminary question which challenges the jurisdiction of this court.

The case is brought here on the hypothesis that it involves a freehold. This is denied by appellees' counsel. They insist that a homestead right does not, in any case, constitute a free-

hold estate, otherwise one could not have such a right where he has a leasehold, merely; and that as respects minor children, upon whom a homestead often devolves, their interest can never exist beyond a definite number of years, which is inconsistent with the idea of a freehold. The *rationale* of the argument, as we take it, is, that because the estate of homestead is of a fixed and uniform value, the quantity of interest (using that term in its technical sense) must, therefore, necessarily be the same in all cases, which makes it more in the nature of an incumbrance than anything else, and hence it is concluded that cases involving a homestead, must, for jurisdictional purposes, be placed in the same category with foreclosure suits, which are uniformly held not to involve a freehold. However plausible the argument may be, we do not regard it as sound. It is directly in conflict with the conclusion reached in *Browning et al.* v. *Harris et al.* 99 Ill. 456, where will be found a full expression of our views on this subject. If, as is contended, appellees' claim of homestead is wholly unaffected by the mortgages from Snell and wife to Jane Snell, and to the Northwestern Mutual Life Insurance Company, and the subsequent proceedings in court founded thereon, it is clear, from the case just cited, that upon the death of Philip Snell his widow took a life estate, for the use of herself and children, to the extent of $1000, in the mortgaged premises; and it is hardly necessary to add, that a life estate in land is, by all the authorities, a freehold estate. Not only so, but appellees have in this very case obtained a decree, directing, if it can be done without injury to the estate, that there be set off and assigned to them a part of the mortgaged premises, not exceeding $1000 in value, to be held by the widow in severalty, for the use of herself and children, as a homestead. When so assigned she would clearly have, for the use of herself and children, an estate for life in the premises, which, of course, would be a freehold estate. If, in the opinion of this court, that decree, under the facts in the case, was unwarranted, and

appellees shall ultimately fail in their suit, it is clear they will simply lose the freehold which the lower court directed to be assigned to them, and, per consequence, it will be gained by the adverse party. This, according to the rule laid down in *Chicago, Burlington and Quincy Railroad Co.* v. *Watson et al.* 105 Ill. 217, and which has been invoked by appellees' counsel, demonstrates that a freehold is involved in this suit. There is another aspect of the case from which the same result might be reached, but it is not necessary to pursue the subject further. The motion to dismiss must be overruled.

Coming now to the merits of the case, it may somewhat aid us to advert hastily, and in a general way, to the legal disabilities of married women, as they existed here and in England before the commencement of the reform legislation which has resulted in so radical a change in the present law on the subject. Their contracts, by the common law, as it existed in England, and in this State prior to the comparatively recent legislation on the subject, commencing in 1861, were absolutely void at law, and were equally so in equity, so far as imposing any personal obligation is concerned. They might, however, by such contracts, subject to certain limitations, bind their separate estate, but they imposed no personal obligation whatever. The right of a married woman to have a separate estate in personal property was purely a creature of equity, and the power to bind it (the estate, not herself,) by a contract fairly entered into in respect to the estate, and on her own account, was regarded as a mere incident of such ownership. As her contract imposed on her no personal obligation, either at law or in equity, it therefore followed, as a logical result and legal sequence, that a bill would not lie to reform a contract or conveyance alleged to have been made by a married woman. As a conveyance of land by deed was a species of contract, it followed that an instrument executed by a married woman, purporting to convey real property, was absolutely void, both at law and in equity, and consequently could not be enforced

or reformed.   While at common law a married woman could
not convey her own real estate, or release her inchoate right
of dower or other interest in the lands of her husband, yet she
might, through the instrumentality of a fictitious suit, called
a fine or fine and recovery, permit another to recover whatever
right she had in the land proposed to be conveyed, and thus,
by a species of estoppel, bar her rights.   At common law this
was the only mode by which a married woman could dispose
of her own lands, or any interest she might have in those of
her husband.   This cumbrous and expensive mode of convey-
ing her interests in real property was abolished by an act of
the British Parliament, (3 and 4 William IV, chap. 74,) under
the provisions of which the wife was enabled to accomplish the
same ends as she has been able to do here from a very early
period, by joining her husband in an ordinary deed of convey-
ance, subject to certain prescribed formalities, which, in all
cases, had to be strictly complied with.   But these statutory
enactments, which enabled a married woman to make a valid
transfer or conveyance of real property, did not at all affect
her disabilities in other respects.   As to her, the deed only
operated as a conveyance; therefore, all covenants contained
in it were, in law, the covenants of the husband only.   It fol-
lowed, that if her deed was not sufficient, on its face, to pass
her property, there was no relief but to induce her to make
another; and if she declined to do so, equity would not compel
her, nor would it reform the instrument, for such a suit could
not, in any case, be maintained for either purpose, except upon
the theory that a contract for a deed had existed between the
parties.   This, of course, could not be done in the case of a
married woman, for the simple reason she could not make
such a contract, nor, indeed, any at all; and of this the court
would take judicial notice.   It is therefore undoubtedly true,
that prior to the modern legislation in this State respecting
the legal disabilities of married women, a court of equity had
no power or authority to reform any alleged contract or con-

veyance made by a married woman, and in the case of a conveyance, it made no difference whether it related to a homestead or some other interest in land. All her conveyances, without regard to the character of the estate or interest granted, stood upon a common footing, and were controlled by the same principles. If they conformed to the requirements of the statute, she was bound by them; if not, they were void, and could not be enforced. The only difference in conveying a homestead and any other interest or right in land, was in the form of the deed, and the disposition of courts to liberally construe the act in favor of the homestead occupant.

The law, however, in respect to the rights and disabilities of married women, has of late years undergone a radical change. By the acts of 1861, 1869 and 1874, married women are to-day, and were at the time of the execution of the mortgages in question, placed upon a common footing with married men in respect to all property rights, including the means to acquire, protect and dispose of the same. They may own, buy, sell, transfer and convey any and all kinds of property, to the same extent as married men or single women may, and subject to no other or different conditions or restrictions. Not only so, but their duties and obligations in respect to these rights and powers are the same as those of others *sui juris*. Like other persons, they must perform their contracts; and if they fail to do so, they are amenable to legal process to the same extent as if they were unmarried. If, in the execution of a deed by a married woman a mistake occurs, so that it does not truly state the contract between the parties, a court of equity will correct it against her, just as readily as it would against any other person. The only difference in respect to conveyances of husband and wife is, that any conveyance good at common law will pass his estate, whether his wife joins him in it or not, and the fact that it is not acknowledged before an officer, will make no difference; whereas in the case of the wife, the statute requires that either the husband must join her in the deed, or,

if executed by her alone, that it be acknowledged before some officer. Of course, this requirement of the statute is mandatory, and, if not complied with, the deed would be invalid. Nevertheless, in such case a court of equity, upon a proper showing in other respects, would compel the delivery of a deed executed in proper form. In the present case there was a simple, manifest mistake in the body of the deed, in describing the land. The homestead was formally released and waived, as required by the statute, and the only effect of correcting the error in the description of the property, was to make the deed express just what the parties to it originally intended it should. The appellees were parties to the decree reforming the deed. The court had jurisdiction of their persons. This is not denied. That the correction of mistakes in deeds and other written contracts executed by persons *sui juris,* is a part of the ordinary jurisdiction of courts of chancery, is beyond dispute. So it is not perceived why appellees are not bound by that decree. And if it be given effect, (as we hold it must,) it follows that appellees have no homestead in the premises, and the decree in the cause was consequently erroneous, and should be reversed for that reason.

The decree of the court below is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*