**W. F. Brennan & Aileen J. Christopher, copartners, etc., Appellants, v. The Purington Paving Brick Company, Appellee.**

## Gen. No. 16,944.

1. PARTNERSHIP—*principal and agent may cancel contract without regard to agent's partner.* Where a paving company gives an agent exclusive sales rights, the parties may terminate the contract even though the principal has knowledge that the agent had formed a partnership for the purpose of making sales.

2. PRINCIPAL AND AGENT—*commissions denied where contract is against public policy.* Where a paving brick company gives an exclusive agency, for the sale of its brick to a city, to a person who forms a partnership with the wife of the official city brick tester, it appearing that the official was the real partner and not his wife, the agency contract is against public policy, and commissions on sales cannot be recovered.

3. PRINCIPAL AND AGENT—*when pleadings need not disclose contract was against public policy.* Where a paving brick company gives an exclusive agency, for the sale of its brick to a city, to

a person who forms a partnership with the wife of the official city brick tester, it being claimed that such official was the real partner, in an action for commissions on sales it is not necessary that the pleadings disclose that the transaction was against public policy.

. Appeal from the Municipal Court of Chicago; the Hon. EDWIN K. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed June 4, 1912.

JOHN A. BROWN, for appellant.

MILCHRIST & MILCHRIST, for appellee.

Mr. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

This is a suit brought and prosecuted in the name of W. F. Brennan and Aileen J. Christopher, copartners, under the name and style of W. F. Brennan, in the Municipal Court of Chicago, by Aileen J. Christopher, who claimed to be copartner with Brennan, against the Purington Paving Brick Company, a corporation, to recover $40,000, alleged to be due from it upon a written contract, dated March 1, 1904, between said company and W. F. Brennan.

The declaration consisted of one special count, alleging an indebtedness of $33,750 due plaintiffs upon a written contract between the Brick Company and appellants, to which was added the common counts. Plaintiffs also filed, as a copy of the instrument sued on, a copy of a written contract, dated March 1, 1904, between the Purington Paving Brick Company and W. F. Brennan, under which Brennan was made the exclusive sales agent of the company for the sale of its No. 1 paving blocks, to be used for paving purposes in public works, in the city of Chicago, for a period of five years. Said contract further provided that it might be rescinded if certain of its conditions were not complied with.

The defendant pleaded the general issue and a verified special plea, denying that the contract was made

with the plaintiffs jointly, and alleging that it was made with Brennan alone. The record also discloses a written partnership agreement, also dated March 1, 1904, between Aileen J. Christopher and Brennan, of which she claimed that the Brick Company had notice, and her claim was founded upon these two contracts.

The Brick Company denied liability upon two grounds: 1st, that the contract between it and Brennan had been terminated late in the year 1905, by the voluntary action of Brennan himself; and 2nd, that, in any event, the contentions upon which Mrs. Christopher sought a recovery were clearly opposed to public policy.

The case was tried before a jury, and resulted in a verdict for the defendant, upon which the court entered judgment. This judgment we are here asked to reverse upon the ground that the verdict is against the law and the evidence, and that the court below erred in ruling upon the evidence and in instructing the jury.

It appears that on March 1, 1904, the Purington Paving Brick Company, of Galesburg, Illinois, entered into a written contract with W. F. Brennan, of the city of Chicago, in which the company gave to Brennan "the sole and exclusive agency for the sale of its No. 1 paving blocks to be used for paving purposes in public works, in the city of Chicago," for a period of five years from date, and provided that the company should deliver its paving blocks f. o. b. Chicago, at an agreed price of $18 per 1,000, to fill such orders as Brennan might obtain, upon which his compensation or commission was to be not less than $2.50 per 1,000. It was further provided that during the term of the contract Brennan should, at his own expense, maintain an office in the city of Chicago, with necessary help and employees. In the contract Brennan guaranteed to sell not less than 3,000,000 paving blocks during the first eighteen months of the con-

tract, and a like amount during each year thereafter, and agreed that a failure on his part to carry out this provision, should authorize the cancellation of the contract by the company.

Mrs. Aileen Christopher testified in her own behalf, that, on the first day of March, 1904, she and W. F. Brennan entered into a partnership for the sale of paving brick in the city of Chicago, by a contract which she produced, and which provided that they should do business together under the name of W. F. Brennan, in the business of acting as agents for such firm, or firms, as they can get to represent, handling and selling brick for a consideration to be agreed upon, to be paid by said firm, or firms. The contract provided that Brennan should give his entire attention to the business, and "that the said Aileen J. Christopher will not give her personal attention to the said business, not any time to it, except sufficient to consult from time to time and to make settlements between the parties hereto."

It further appears that Brennan was formerly a deputy commissioner of public works in Chicago, which· position he resigned on the 28th day of February, 1904, and that he signed this partnership agreement on the day following. It further appears that during the term of this contract, and for several years theretofore, Daniel J. Christopher, husband of Aileen J. Christopher, was the official brick tester of the City of Chicago.

It was further shown that the Brick Company delivered at Chicago, within the period covered by its contract with Brennan, including those sold with or without the efforts of appellants, 11,035,400 paving brick, to be used in the City of Chicago, upon which appellant claims a commission of $2.50 per 1,000, making a total amount of $27,587.50. During the period, the Brick Company paid Brennan, on account of its contract with him, $7,174.75, of which amount

280    APPELLATE COURTS OF ILLINOIS.

Brennan & Christopher v. Purington Pav. B. Co., 171 Ill. App. 276.

$1,000 was paid over to Daniel J. Christopher. In the fall of 1905, when it is claimed that the contract was canceled by mutual agreement, Brennan gave up his office and had no further business with the Brick Company. At that time, he ordered the Company to pay to Daniel J. Christopher the sum of $4,223, being the balance due Brennan under said contract, said payment to be in full settlement of all matters between Brennan and the Brick Company, and this amount was paid before the close of that year.

Notwithstanding the direct and unequivocal testimony of Brennan, that he abandoned the contract in question and retired from the brick business in the fall of 1905, in which he is confirmed by the testimony of Purington, the president of the Brick Company, Mrs. Christopher claims the right to prosecute this suit and to hold the defendant company liable for the total number of bricks sold during the entire period covered by its contract with Brennan, upon the ground that she had a partnership contract with Brennan, which covered the same period, of which contract between herself and Brennan, she insists the Brick Company had notice of, and subsequent to, the time of its execution.

We entertain no doubt that Brennan and the Brick Company had the right to terminate the contract between themselves without regard to whether or not the Brick Company knew of the contract between Brennan and Mrs. Christopher, or whether or not she assented to such cancellation; and, that upon this point alone the defense was fully established.

If, however, there were the slightest doubt upon this point the whole transaction appears to us so tainted with fraud that the case must have gone against appellant upon grounds of public policy. We think the record clearly justifies the conclusion that the contract insisted upon by Mrs. Christopher, between herself and Brennan, was a mere subterfuge,—an inef-

fectual attempt to conceal the fact that Brennan's real partner in the partnership was *not Mrs. Aileen J. Christopher but was her husband, Daniel J. Christopher,* who, for years prior to the date of the contract with Brennan, and during the entire time it was in force, was the official brick tester of the City of Chicago, and, as such, owed a duty to it, which, as a matter of law, precluded his acquiring any rights under such a contract as the one in question. The evidence of Mrs. Christopher discloses the situation; she testifies under oath, "I am the wife of Daniel Christopher, who was city brick tester for the City of Chicago during the time of this suit. I live with him as my husband now, and have at all these times. He is now a contractor in Wisconsin. He knew I had these contracts. * * * The consideration given in return for these contracts was none at all so far as money was concerned. They gave me the contracts because I had pull enough to land them. I was not supposed to devote any of my time to attending to the business of the office, because my contract especially stated that I need not do so. * * * I was never in any business before. I was not supposed to know anything about the brick business." This testimony, coupled with the undisputed evidence of the payment by the Brick Company to Daniel J. Christopher of thousands of dollars out of the proceeds of the contract between the Brick Company and Brennan, establishes clearly the dangerous and fraudulent character of the transaction. Brennan testified: "I paid Mr. Christopher $1,000 in 1904, for which I have no receipt. Mrs. Christopher did not order me to pay it to him; I had no order. I paid him in cash. *Daniel J. Christopher was the silent partner.* The contract was made in the name of Aileen J. Christopher, but I can give no reason why Mr. Christopher's name did not appear."

The courts will refuse any aid in carrying out such agreements. Nor was it necessary that the pleadings

282   APPELLATE COURTS OF ILLINOIS.

Brennan & Christopher v. Purington Pav. B. Co., 171 Ill. App. 276.

should have disclosed the defense that the transaction was against public policy. In Crichfield v. Bermudez Asphalt Paving Co., 174 Ill. 466, our Supreme Court said:

"Where a contract is in terms *contra bonas mores,* it is not necessary for the defendant to plead the objections. A court will not proceed to judgment upon it, even where both parties assent thereto. In such cases there can be no waiver. The defense is allowed not for the sake of the parties but for the sake of the law itself. The principle is indispensable with the purity of its administration. It will not enforce what it had forbidden and denounced. The maxim *ex dolo malo non oritur actio* is limited by no such qualifications. When the illegality appears, whether the evidence comes from one side or the other, a disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted by the vice of the original contract and void for the same reasons. Wherever the contamination reaches it destroys. * * * Where an action is founded on an illegal contract the law will leave the parties where it found them and grant no relief to either of them."

A question similar to that under consideration here was presented in the matter of the Estate of Andrew E. Smythe et al. v. Evans, 209 Ill. 376. In that case, a contract for the erection of a gas plant was made between the Universal Gas Company and one Andrew E. Smythe, to be constructed by Smythe under the supervision of one C. H. Evans, engineer, the workmanship and material to be first-class, and the work to be done to the satisfaction of said engineer. The evidence disclosed the fact that Evans, whose duty it was, as engineer for the Gas Company, to pass upon the sufficiency of the work done by Smythe, was also in the employ of Smythe, the contractor, and by contract with him entitled to receive from him one-half of the profit he should realize from the contract, thus

placing him in a position where loyalty to the interests of his employer, the Gas Company, would bring him in conflict with his own interests as an employe of and partner with Smythe, because, in the latter capacity, his interests would be advanced in accepting, as a compliance with the contract, workmanship and material of a cheaper grade than first-class. In deciding the matter, the court quoted from a previous opinion and said:

"The inquiry is not whether the contract the trustee has made is the best that could have been made for the *cestui que trust,* or whether it is fraudulent in fact. So strictly is this principle adhered to that no question is allowed to be raised as to fairness of the contract. The principle has a broader scope. The law has absolutely inhibited the agent or trustee from placing himself in a position where his own private interests would naturally tend to make him neglectful of his obligations to his principal, or where his position would afford him an opportunity to speculate in the trust property."

In the same case, the court further announced the doctrine that, "where a party comes into court seeking to enforce a contract which is against public policy or is prohibited by public law, the court will refuse to aid either party and will leave them where they have placed themselves, and in refusing to enforce such contracts the court does not act for the benefit, or for the preservation of the alleged rights of either party, but in the maintenance of its own dignity, the public good, and the laws of the state" (citing Wright v. Cudahy, 168 Ill. 86, and numerous other cases). "Nor will the fact, if it be a fact, that both parties knew of the double employment enable Evans to recover."

Upon the facts disclosed in this record appellant was not entitled to recover, and the judgment of the court below will, therefore, be affirmed.

*Judgment affirmed.*