Guy R. Barrow, Appellee, v. Gertrude Phillips, Appellant.

Gen. No. 8,219.

Opinion filed July 2, 1928.

Herrick & Herrick, for appellant.

Schneider & Schneider, for appellee.

Mr. Justice Eldredge delivered the opinion of the court.

On September 26, 1927, a judgment by confession was rendered in the circuit court of Ford county, in vacation during the adjournment of the August term, A. D. 1927, thereof, in favor of appellee and against appellant for the sum of $4,474.16. The judgment was based upon two promissory notes, each with the usual power of attorney to confess judgment and each bearing date June 12, 1925, and bearing interest at the rate of 6 per cent per annum after date until paid. One of said notes is for the principal sum of $3,000, maturing January 1, 1927, and which bears an indorsement showing that $1,000 was paid thereon on the 9th day of November, 1926. The other note is for the principal sum of $2,000, maturing on January 1, 1928. On January 4, 1928, a motion was made by appellant to have executions, which had been issued to the counties of Ford and McLean, stayed, to open up said judgment and for leave to plead to the merits. In support of this motion appellant filed an affidavit, which, after setting out the facts heretofore noted, further avers that said two notes are two of a series of four notes executed by appellant on or about June 12, 1925, each bearing interest at the rate of 6 per cent per annum from date and each containing a warrant to confess judgment. The first note was for $1,000, maturing November 1, 1925, the second for the sum of $2,000, maturing January 1, 1926, and the third and fourth, respectively, being the same two notes on which the judgment in this case was rendered. It is further averred by appellant in her affidavit that on July 29, 1925, being a little over six weeks after making delivery of said notes, appellee pretended to have a judgment

rendered upon all four of said notes in the court of common pleas of Paulding county, Ohio, against her for the sum of $8,022.35 and costs; that execution issued on said pretended judgment and was levied upon certain lands then owned by appellant in Paulding county, Ohio, which were advertised for sale by the sheriff of said county; that thereafter on September 26, 1927, appellant made her motion in said court of common pleas to have said judgment vacated, which motion was allowed and said judgment was vacated; that on the next day after said judgment in the court of common pleas of Paulding county, Ohio, had been vacated and set aside, judgment in this cause was entered in the circuit court of Ford county; that thereafter appellant served notice on appellee that she would apply to one of the judges of the circuit court of Ford county on October 28, 1927, for an order staying the execution in this cause and also for an order setting aside and vacating said judgment; that on said day appellee appeared and by his attorney requested the hearing on the motion last named be postponed and that thereafter said motion was heard November 30, 1927, before the court who took the same under advisement until December 4, 1927, when he entered an order and judgment denying said motion; that the ground for said motion last named was solely upon the legal proposition that said circuit court of Ford county had no jurisdiction to enter the said judgment last named. It is further averred by appellant in the affidavit that about a year prior to June 12, 1925, she and her husband had had domestic difficulties and that the latter had thereupon gone to Miami, Florida, and was spending the greater portion of his time separate and apart from affiant; that affiant for a year prior to that time had suffered from a severe and debilitating sickness, which had seriously and materially weakened her physical condition and that during all of said time she was exceedingly anxious that a

reconciliation be brought about between herself and her husband; that she had been well and personally acquainted with appellee for more than 20 years and had likewise been well and intimately acquainted with one J. V. Shertz for a period of 15 years and that she reposed great confidence in the integrity of said appellee; that appellee and Shertz and several others had organized a corporation under the laws of the State of Florida known as "Gibson Properties, Inc.," with a capital stock of $50,000, and of the par value of $100 per share; that said Shertz owned $10,000 of the stock and each of the other four incorporators $5,000, and that the remainder of said capital stock was not paid in or stock issued to represent it; that said Shertz held certificates of stock for 100 shares and each of the other incorporators for 50 shares; that on the organization of said corporation said Shertz was elected president and appellee secretary, and that they respectively held said offices until a date shortly prior to June 12, 1925; that said corporation was organized for the purpose of dealing in real estate in the State of Florida and that its principal office was located at Miami, Florida.

The affidavit then proceeds as follows:

"That some time in the month of May, 1925, this affiant met said Guy R. Barrow in said Gibson City, and then and there had a talk with him about the said Gibson Properties, Inc., and the business that it was then doing. That said Guy R. Barrow then and there stated to this affiant, in substance, that the corporation was doing a large business, and that his fifty shares of stock were then and there worth fifteen thousand dollars ($15,000.00) or upward, and that it would be a wise, prudent and safe investment for this affiant to buy his said fifty shares of stock in said corporation, and would likewise be of advantage to her by reason of the fact that she would then be a stockholder in the same corporation with her said hus-

band, and it would materially aid her in affecting a reconciliation with her said husband.

"That this affiant then told the said Guy R. Barrow, in substance, that she would like to buy the stock, but that she could not pay more than five thousand dollars ($5,000.00) therefor, and that she did not have that much money, but that she had only about four thousand ($4,000.00) dollars in cash.

"That the said Guy R. Barrow then and there refused the offer of this affiant for said stock, and then and there represented that said stock of him, the said Guy R. Barrow, in said corporation was then and there of the cash market value of fifteen thousand dollars and upwards of that amount. That this affiant then and there believed the representation of the said Guy R. Barrow as to the value of the said stock and relied upon his representation as to the value of said stock. That the said Guy R. Barrow then and there knew that his representation as to the value of said stock was not true, and that the representation was then and there made for the fraudulent purpose of inducing this affiant to invest in said stock, and he, the said Guy R. Barrow, then and there knew of the domestic difficulties that then and there existed between this affiant and her said husband, and made the said representation to her with reference to her purchase of said stock that it would materially aid her in bringing about an adjustment of the difficulties between her and her husband and restore them to a state of harmony, for the purpose of persuading her to buy said stock, then and there knowing that this affiant was exceeding anxious to bring about a reconciliation between her husband and herself.

"That being deceived as to the value of said stock, and being exceedingly desirous of affecting a reconciliation with her husband, this affiant offered the said Guy R. Barrow twelve thousand dollars ($12,000) for

his stock, which the said Barrow did not accept, but left Gibson City within a few days for Miami, Florida.

"That about the first few days of June the said Guy. R. Barrow sent a telegram to his wife, who was then and there residing in Gibson City, in substance advising her to notify this affiant that he would accept her offer of twelve thousand ($12,000) dollars and would close the deal with her at Miami, Florida.

"That thereupon the wife of said Guy R. Barrow told this affiant the substance of the aforesaid telegram, and that her husband required a thousand dollars paid down to bind the bargain before this affiant started to Miami.

"That thereupon, on the same day, this affiant immediately made her arrangements to start to Paxton, Illinois, which is the county seat of Ford county, and the county in which said Gibson City was then and is now located, for the purpose of taking a fast train on the Illinois Central Railroad to Miami.

"That on her arrival at the depot at Paxton for the purpose of boarding the train leaving there at 7:37 p. m. this affiant found the wife of Guy R. Barrow, with one of his attorneys, and they then and there requested of her a check of a thousand dollars, which affiant then made out and delivered to her, and the time was so short that she had no opportunity to buy a ticket, but boarded the train without having secured a ticket for Miami.

"That Mrs. Barrow, wife of the plaintiff, wired the said Guy R. Barrow in substance that this affiant was on her way to Miami and what train she would arrive on, and also that this affiant would meet him, the said Barrow, at the First National Bank in Miami; that on her arrival this affiant immediately went to the First National Bank in Miami and there met the said Guy R. Barrow.

"That in the course of the conversation at Gibson City the said Guy R. Barrow repeatedly cautioned this

affiant not to let her husband know that she was dealing for this stock in said corporation, and assigned as a reason, in substance, that that would spoil the plans by which she would affect a reconciliation with him.

"That affiant on her arrival at Miami, Florida, did not in any wise communicate to her husband the fact that she was then purchasing the aforesaid shares of stock, but concealed that fact from him by reason of the aforesaid admonition of the said Barrow, in substance, that for her to do so would be to spoil the entire effect of her purchase of said stock, and that her husband, or someone else for him, would immediately buy said stock.

"That upon affiant's arrival at the First National Bank at Miami, Florida, she found the said Guy R. Barrow there, accompanied by two former residents of Paxton, Illinois, and then associated in different dealings and undertakings in Florida with the said Barrow.

"That within thirty to forty-five minutes after this affiant arrived at said bank she gave her check for four thousand ($4,000.00) dollars to him and delivered the four aforesaid promissory notes, which included the two notes upon which the aforesaid judgment in this proceedings has been taken in this court, and received from the said Guy R. Barrow the aforesaid certificate for fifty shares of the capital stock standing in the name of the said Guy R. Barrow in said Gibson Properties, Inc.

"Affiant further states that said fifty shares of stock in said Gibson Properties, Inc., were not then and there of the fair cash market value of twelve thousand ($12,000.00) dollars, but this affiant then and there believed said stock to be of such value, having been induced to that belief by the aforesaid misrepresentation as to the said fact made by the said Guy R. Barrow to this affiant, and that said Guy R. Barrow then and there well knew that said stock was not

of such value and was not then and there worth its par value.

"Affiant further states that, as a matter of fact, the said stock aforesaid in the Gibson Properties, Inc., then and there had no market value, and from thence hitherto has had no market value.

"That this affiant is now ready, able and willing to return and surrender to the said Guy R. Barrow the aforesaid fifty shares of stock in said Gibson Properties, Inc., and hereby offers to return the same to him, the said Guy R. Barrow."

The court, upon a hearing of the motion by appellant to open up the judgment and for leave to plead, supported by the above affidavit, overruled the motion, for a review of which action appellant has brought her appeal to this court.

It is contended by counsel for appellant that the facts set out in the affidavit show that appellant was induced to purchase said stock, and execute the notes in payment therefor, by fraud practiced upon her by appellee; that appellee, knowing her weakened physical and mental condition and her intense desire to be reconciled to her husband, and his false assurance that said stock had a cash market value of $15,000, when, in fact, it was worthless and had no market value, which he, having been secretary of the corporation, well knew at the time, was such a fraud upon her as should vitiate the contract and also that there was a complete failure of consideration.

On motions of this character the controlling question is whether the judgment debtor has shown an equitable reason why his motion should be allowed. *Mumford v. Tolman*, 157 Ill. 258; *Moyses v. Schendorf*, 238 Ill. 232. If this affidavit presents any facts establishing an equitable reason why the motion should be allowed, it is the duty of the court to sustain it and permit the defendant to plead to the merits, and the usual practice when such a motion is allowed is to

order the judgment to stand as security for the debt. The false statement of a material fact as an inducement for the execution of a note is a procurement of the note by fraud. In our opinion, under the facts as set out in this affidavit, the assurance by appellee that his stock in the corporation had a cash market value of $15,000, when, in fact, it had no such market value, which he well knew, was a false statement of a material fact. Failure of consideration is a good defense to promissory notes.

But, in our opinion, the facts set up in this affidavit present a defense to the notes which is absolutely controlling. The appellant was a married woman. While the affidavit does not specifically say that she signed these notes in the State of Florida yet it does specifically state that she delivered them to appellee in that State. The rule in this State is well established that where no facts are shown to the contrary it will be presumed that the common law prevails in a foreign State. Under the common law a promissory note executed by a married woman is not merely voidable but absolutely void. In the case of *McLean v. Griswold,* 22 Ill. 218, which was decided in 1859, the court said: ''While some courts have held, when a plea of infancy was interposed, that the plaintiff may enter a *nolle prosequi* as to him and proceed to judgment against the other defendants upon the ground that the contract of an infant is binding until it is avoided, yet we have been referred to no adjudged case, nor are we aware of any, which has held that such a course may be adopted when the contract has been entered into by a married woman, with other persons. Such a contract as to her, is not merely voidable but is absolutely void. When the coverture is pleaded, it is not interposed as a discharge from a contract once binding, but upon the grounds that no valid contract was entered into by her, when it was executed. Her contract being void, she occupies to it the relation of a stranger to

the agreement, and is no more liable to be sued upon it, than any stranger to it, and if improperly joined in the action, the misjoinder cannot be cured by a *nolle prosequi*." In *Snell v. Snell*, 123 Ill. 403, it was said in regard to contracts made by married women: "Their contracts, by the common law, as it existed in England and in this State prior to the comparatively recent legislation on the subject, commencing in 1861, were absolutely void at law, and were equally so in equity, so far as imposing any personal obligation is concerned." To the same effect is the case of *Thompson v. Minnich*, 227 Ill. 430. In *Forsyth v. Barnes*, 228 Ill. 326, the court, after holding the general principle that courts will not take judicial notice of the laws of another country, but they must be alleged and proved as facts and that in the absence of all proof to the contrary, the common law is presumed to prevail in the states of the Union and that any common-law contracts of a *feme covert* are absolutely void and not simply voidable, states further: "If the contract is such as a married woman is incapacitated to enter into, her confession of judgment under the contract is a nullity. Her capacity to confess judgment depends upon and is co-existent with her capacity to contract. * * * Manifestly, at common law, by the great weight of authority, a confession of judgment on a warrant of attorney executed by a woman during coverture is void as to her and can be attacked either directly or collaterally. This being so, assuming, as we must, that the common law is in force in Ohio, it must be held that the judgment against appellant, Anna M. Forsyth, in the court of common pleas in that State was void, and the trial court of this State improperly instructed the jury to return a verdict against her, based solely on the transcript of the judgment record of the Ohio court." In *Burr v. Beckler*, 264 Ill. 230, it was held: "A note takes effect from the time of its delivery and not from its date. Until the maker of a note parts

with the possession and control of the instrument he may cancel it or dispose of it as he pleases, and a note is not executed until delivered. The note in this case was made in Florida, and the trust deed was signed at the same time and acknowledged before a notary public in the county of Dade, in that State. Charles H. Tobey had designated the United States mail as the means of transmission of the note and trust deed to him, and Ednah J. Tobey, in compliance with his request, deposited them in the mail in the State of Florida. When the note and trust deed were so deposited, Ednah J. Tobey, the maker, parted with the possession of and lost all control over the papers and all right to retake or reclaim them. Under such circumstances the delivery was complete in Florida when the note and trust deed were placed in the mail, directed to Charles H. Tobey, trustee of the Ludington estate. * * * The fact that the domicile of Ednah J. Tobey was in Illinois did not enable her to execute a note in the State of Florida contrary to the laws of that State, under which she was not competent to enter into a contract.''

The evidence in this case shows conclusively that the notes on which the judgment was rendered were at least delivered to appellee by appellant, a married woman, in the State of Florida. A note is not executed until it is delivered. The court must presume that the common law prevails in that State and under the common law a note executed by a married woman is absolutely void and the note being void, the power of attorney to confess judgment thereon is also void.

The judgment of the circuit court is reversed and the cause remanded with directions to sustain the motion of appellant to open up the judgment and for leave to plead.

*Reversed and remanded with directions.*