Strat-O-Seal Manufacturing Company and Paul H. Philips, Plaintiffs-Appellants, v. William J. Scott, as Treasurer of the State of Illinois, Michael J. Howlett, as Auditor of Public Accounts of the State of Illinois, James A. Ronan, as Director of Finance of the State of Illinois, and Harold O. Swank, as Director of Public Aid for the Department of Public Aid of the State of Illinois, Defendants-Appellees.

Gen. No. 10,736.

Fourth District.

June 30, 1966.

Seyforth, Shaw, Fairweather & Geraldson, of Chicago (Owen Fairweather, Walter P. Loomis, Jr., and Jerald L. Sager, of counsel), for appellants.

William G. Clark, Attorney General of Illinois, of Springfield (Madalyn Maxwell, of counsel), for appellees.

SMITH, J.

The single limited issue in this case is whether strikers and their families may receive aid under the Public Assistance Code when the need for such aid arises solely and initially from participation in a strike arising out of a labor dispute. Such aid is now made available under the rules and regulations of the Department of Public Aid. The trial court found for the defendants and refused to enjoin the use of public funds for such payments. Plaintiff taxpayers appeal.

The controversy centers on the provisions of the Code that general assistance is available to "persons who for unavoidable causes are unable to maintain a decent and healthful standard of living" further restricted by the proviso that "any employable person who refuses suitable employment or training for self-support work shall not receive general assistance." Ill Rev Stats c 23, § 401 (1963). We focus our attention on the words "unavoidable causes" and "suitable employment and training." Plaintiffs' principal thrust is that need arising initially and solely from the status of striker is voluntarily assumed either through participation or acquiescence and is thus not for "unavoidable causes."

Also under fire is the provision for aid to dependent children as defined in the Code restricted as follows:

". . . If the parent or parents refuse without good cause, as defined by rule and regulation of the State Department, to accept employment in which he or they are able to engage, which is offered through the public employment offices, or refuse any other bona fide offer of suitable employment, as defined by rule and regulation of the State Department,

family assistance granted the child and his family shall be terminated for as long as the parent or parents refuse the offered employment." Ill Rev Stats c 23, § 605.3 (1965).

Plaintiffs contend that the words "without good cause" means a cause not voluntarily assumed through participation or acquiescence in a strike.

The payments now attacked have been made for some fifteen years last past. Plaintiffs contend that this is contrary to the announced policy of our State to remain neutral in labor disputes, Buchholz v. Cummins, 6 Ill2d 382, 128 NE2d 900, and the refusal of the legislature to finance strikes out of public funds. Local Union No. 11 v. Gordon, 396 Ill 293, 71 NE2d 637. Both of these cases were considering our statute relating to unemployment compensation. Ill Rev Stats c 48, ¶ 300 (1965). Section 604 of that Act [¶ 434 of the statute] provides:

"An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed. . . ."

American Steel Foundries v. Gordon, 404 Ill 174, 88 NE2d 465, held that a labor dispute includes a strike; that one who strikes becomes voluntarily unemployed; that where two weeks were required after the strike was settled to fire the furnaces and resume work such unemployment was, nevertheless, a necessary consequence of the strike; that during such two weeks they were not involuntarily unemployed and were not entitled to compensation for such two weeks even though ready and willing to resume work. Thus, both the legislature and the Supreme Court have spoken unequivocally so far as unemployment compensation to strikers is concerned.

It is urged that like results should obtain under the Public Assistance Code. Otherwise, it is urged, the State violates its neutrality in labor disputes, utilizes the public revenue to finance striking laborers and grants to striking laborers and their families under the Public Assistance Code financial assistance which has been denied them under Unemployment Compensation. Thus, the restrictive provisions which deny compensation to striking laborers are, in effect and in fact, reduced to a porous shell. Such a conclusion, we think, stems from an astigmatic view of the nature and purpose of the two legislative enactments. Compensation is generated through lack of work with economic need purely incidental thereto. Assistance is triggered by economic need with lack of suitable work incidental thereto. Whether they should, might or could be controlled by the same principles is not before us. The issue is whether or not the legislature can be said to have so treated them. We think not.

Plaintiffs argue that it is indeed anomalous to hold that a striker is voluntarily unemployed and ineligible for unemployment compensation benefits and, at the same time, hold that he is out of work due to "unavoidable cause" and thus eligible for general assistance benefits. Such patently inconsistent intent should not be charged to our legislators, it is said. If an anomaly does exist, it would appear that it is now about sixteen years old. In practice it has resulted in a denial of unemployment compensation to strikers and the allowance of aid to striking employees and their families under the Public Assistance Code. It seems hardly conceivable that this was not known to our legislators. They did nothing. Late in the 73rd General Assembly, Senate Bill 358 passed the Senate and was sent to the House incorporating into the Public Assistance Code the basically same provisions as to strikers which are in the Unemployment Compensation Act. Either for lack of time or

insufficient votes or pure indifference—and for our purposes at this point it makes no difference—the bill did not pass. If the Public Assistance Code as it now exists denies payments to strikers and their families, no amendments are necessary. If the legislature felt that such payments should be specifically denied—and it knew or should have known that administratively they weren't being denied—it either failed or refused to say so. Devoid of legislative capacity, we see no reason for us to do a remodeling job when it would seem that the legislature likes the structure as it is and as it is being administered now. The Unemployment Compensation Act suggests that the legislature knows what language to use to specifically express its intention.

■ ■ The present policy was generated by an unpublished opinion of the Attorney General to the State's Attorney of Will County dated May 5, 1950, in which he said:

> ". . . It is my opinion that subject to the approval of the Illinois Public Aid Commission, if otherwise eligible, a person 'in need' due to 'unavoidable causes,' is entitled to receive Public Assistance, even though he may be out of employment because of a strike."

A second opinion dated January 19, 1962, 1962 Op Atty Gen 189, reads in part as follows:

> ". . . The Illinois Public Aid Commission also has this authority under Paragraph 607 of the Illinois Public Assistance Code, and nothing in the statutory sections discussed herein precludes the payment of Aid to Dependent Children to the children of persons engaged in a labor strike, where the other tests of eligibility are met."

Both sides concede that the issue before this court is a matter of first impression in the courts of this State.

This being true, these opinions of the Attorney General as Chief Law Officer of the State of Illinois "will be accorded considerable weight." City of. Champaign v. Hill, 29 Ill App2d 429, 444, 173 NE2d 839, 846. These opinions as well as administrative policy pursued as a result of them and the fact that the legislature has seen fit to remain quiescent through several successive sessions suggests and indicates "legislative acquiescence in the contemporary and continuous interpretation" which they announced. People ex rel. Spiegel v. Lyons, 1 Ill2d 409, 414, 115 NE2d 895, 898. It would seem that we too ought to fold our tents and steal away.

■ To avoid our departure, plaintiffs suggest that final construction of statutes is for the courts and not for an executive or administrative branch of government and that an erroneous construction by such branches, even though somewhat aged, is not binding on the courts. This is true. Ray Schools-Chicago, Inc. v. Cummins, 12 Ill2d 376, 146 NE2d 42; C. O. Baptista Films v. Cummins, 9 Ill2d 259, 137 NE2d 393. Even though not binding, we have already indicated that it is and should be persuasive. In addition, we do not regard the interpretation given the Public Assistance Code over the years as patently erroneous. We cannot accept plaintiffs' thesis that one who voluntarily participates or acquiesces in a strike cannot be considered unemployed for "unavoidable causes," or that one who voluntarily withholds his services from his employer by electing to go on a strike has "refused" employment which is available to him or that he has not "for good cause" refused a bona fide offer of suitable employment by refusing to remain on the job in the face of a bona fide strike. Labor union membership or activity and the right to strike in proper cases and under proper circumstances is an accepted fact in our industrial community. Plaintiffs would ask us to exact by judicial interpretation as the price of exercising that right a forfeiture of the benefits available

to others under the Public Assistance Code. By so doing, we exact a quid pro quo and impose economic sanctions not specifically required by the Code. The strong arm of the State is thus employed to strangle otherwise authorized activity and State neutrality ends. We do not see how the legislature has or how we should create a blanket classification when the Code itself conveys the thought that the propriety of assistance rests on individual need and individual performance. It is now so administered and should remain that way.

Plaintiffs contend that both opinions of the Attorney General as well as the judgment order of the trial court are ambiguous when they say, in effect, if you are otherwise eligible for public assistance, participation in a strike does not in itself act as a bar. This, they say, means only that if the need arises from unavoidable causes independent of the strike, then such person would be eligible for public assistance even though unemployment resulted from participation in a strike. This is much different they say than the ruling sought here that where the inability to support oneself and the resultant need for aid arises solely and initially from participation in a strike, such aid is not authorized by the statute. It seems to us that we are asked to enunciate a meaningless rule of law. It seems to us that need arising initially and solely from participation in a strike is purely a theoretical phantom. Present employment terminates through participation or acquiescence in a strike. It may be a factor contributing to the ultimate creation of an economic need, but it cannot solely, and standing alone, create such a need; nor does it do more initially than set the stage. Economic need is not then ipso facto born. It does not arise until economic reserves, other available resources, if any, and the inability or refusal to find other suitable employment is exhausted. The need for aid does not arise solely and initially from participation in a strike. It arises either from the refusal to help oneself

or the inability to do so. The former is a bar to public aid; the latter is clearly within the purview and intent of the Public Assistance Code. The former is clearly an avoidable cause; the latter is clearly an unavoidable cause. The latter is an avoidable cause only if it may be said that it can be avoided by abdicating the right to participate in a proper strike or by remaining on the job in the struck plant. To so hold is to place the hangman's noose over an existing right when the legislature has not specifically done so. Plaintiffs would have us hold that you can participate, or acquiesce in a strike at the place of your employment only if you can initially afford it and then only so long as you can continue to afford it. The expenditure of public funds for the use of such people is predicated upon their compliance with the other requirements of the Public Assistance Code. Unless they do, they are entitled to no aid. If they do, the fact that they are on a bona fide strike does not bar proper assistance. We do not now question the right of the legislature to weave the noose as a matter of public policy if it so desires. We cannot say that it has done so. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

TRAPP, P. J. and CRAVEN, J., concur.