THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* J. R. SIMPKINS, Defendant-Appellee.

Fifth District   No. 76-253

Opinion filed January 13, 1977.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

No brief filed for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant-appellee J. R. Simpkins was charged in two indictments with the offense of "having an interest in a contract" in violation of section 3 of the Corrupt Practices Act (Ill. Rev. Stat. 1975, ch. 102, par. 3). After a hearing, the Circuit Court of Williamson County granted defendant's motions to dismiss the indictments for failure to state an offense. (See Ill. Rev. Stat. 1975, ch. 38, pars. 111—3(a)(3) and 114—1(a)(8).) The State has appealed pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1)). We must determine whether the court below erred in finding that the indictments, which alleged that the defendant was mayor of the City of Hurst while his wife was employed as water department clerk of the same city, were insufficient to charge an offense.

The statute provides, in relevant part:

"No person holding any office, either by election or appointment under the laws or constitution of this state, may be in any manner interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. * * *Any contract made and procured in violation hereof is void." (Ill. Rev. Stat. 1975, ch. 102, par. 3.)

Section 4 of the same act, as amended, makes a violation of the act punishable as a Class 4 felony, with the additional penalty of mandatory forfeiture of office. (Ill. Rev. Stat. 1975, ch. 102, par. 4.)

The first of the indictments at issue here charged:

"That between June 1, 1974 and October 8, 1975 in Williamson County, J. R. Simpkins committed the offense of having an interest in a contract in that between June 1, 1974 and October 8, 1975, at and within the County of Williamson, State of Illinois, the defendant, J. R. Simpkins, a municipal officer, the mayor of the City of Hurst, Williamson County Illinois, was interested, directly or indirectly, in a contract of the municipality, whenever consideration of the contract was paid from the treasury of said city in that J. R. Simpkins was mayor of the City of Hurst when the City had a contract of employment with Mrs. Cleo Simpkins, wife of J. R. Simpkins, as Water Department Clerk of the City of Hurst and the consideration for said contract was paid from the treasury of the City of Hurst and that said J. R. Simpkins was holding office by election or appointment under the laws of this state and may have been called upon to act or vote in the making or letting of said

contract in violation of Paragraph 3, Chapter 102, Illinois Revised Statutes."

The second indictment charged a violation of the same statute in that, during the same period of time, the defendant,

"* * * a person holding an office, either by election or appointment under the laws or constitution of this State was interested either directly or indirectly in a contract for the performance of work, the making or letting of which such office may have been called upon to act or vote in that J. R. Simpkins was mayor of the City of Hurst when the City of Hurst made or let a contract of employment with Mrs. Cleo Simpkins, wife of said J. R. Simpkins, as Water Department Clerk of the City of Hurst, the consideration for said contract having been paid from the treasury of the City of Hurst * * *."

■■ Although the State distinguishes between the two indictments on the basis that the former alleged that the employment of defendant's wife *continued* while the defendant was mayor, while the latter alleged that the employment contract *originated* during defendant's term, we do not find that to be a critical distinction. We agree with the court in *Koons v. Richardson*, 227 Ill. App. 477, 485 (4th Dist. 1923), which called it "wholly immaterial whether the contract was made before or after appellant became a city officer." If the indictments were in other respects sufficient, it would be of little moment whether the contract in which defendant had a prohibited interest originated or merely continued during his term of office, as he clearly might be called upon to act or vote on the renewal of the employment contract, modifications in salary and other terms of employment, and the like.[1]

We do, however, have other serious questions about the sufficiency of these indictments. The primary one, a negative answer to which would mean we need not reach any of the other questions, is whether the defendant was alleged to have the kind of direct or indirect interest contemplated by the statute in his wife's employment contract with the city.

■■ At one time, of course, this question could not even have arisen, because Mrs. Simpkins, as a married woman, could not have had a contract with the city, nor, for that matter, with anyone. At the common law, a married woman possessed no contractual capacity; her attempts to contract were absolutely void. (*Forsyth v. Barnes*, 228 Ill. 326, 81 N.E.

[1] We note that Hurst is incorporated as a city under the aldermanic form of government. The Municipal Code makes the mayor the chief executive officer of a city. He has the right to vote in the city council under certain limited circumstances, with powers related to the expenditure of money and the fixing of salaries of city employees. See Ill. Rev. Stat. 1975, ch. 24, especially pars. 3—4—4, 3—11—14, 3—11—18 and 3—13—2.

1028 (1907); *Barrow v. Phillips*, 250 Ill. App. 587 (3d Dist. 1928).) Her earnings belonged to her husband. (*Hay v. Hayes*, 56 Ill. 342 (1870).) These and other like disabilities, however, were removed in Illinois by the progressive legislation of the 1860s and 1870s. (See *Hamilton v. Hamilton*, 89 Ill. 349 (1878); *Snell v. Snell*, 123 Ill. 403 (1888).) As it now reads, the Married Women's Act (Ill. Rev. Stat. 1975, ch. 68, par. 1 *et seq.*) provides, *inter alia*, that "[c]ontracts may be made and liabilities incurred by a wife, and the same enforced against her, to the same extent and in the same manner as if she were unmarried," and that "[a] married woman may receive, use and possess her own earnings" and "own in her own right, real and personal property * * *." (Ill. Rev. Stat. 1975, ch. 68, pars. 6, 7, and 9.) In light of these provisions of our law, could it be held as a matter of law that one has an interest in a contract merely because one's spouse is a party to the contract?

In support of its position that the financial interest of a spouse is such an interest as to come within the statute's prohibition, the State refers us to an opinion of the Illinois attorney general (1973 Op. Att'y Gen. 45), and to the case of *Bock v. Long*, 3 Ill. App. 3d 691, 279 N.E.2d 464 (1st Dist. 1972). Relying exclusively on the *Bock* case, the attorney general rendered the opinion that a county board member would be indirectly interested in a contract between the county and a depository of the county's funds so as to void the contract if the board member's spouse owned stock in the depository. (1973 Op. Att'y Gen. at 50-51.) In *Bock v. Long*, the court held that evidence that a police officer filed with his wife a joint tax return, one schedule of which included profit or loss from the operation of a dramshop held in her name, and that the officer worked without compensation as janitor and bartender in the dramshop, was sufficient to support the determination of the board of fire and police commissioners that the officer should be discharged for violating a provision of the Liquor Control Act (Ill. Rev. Stat. 1969, ch. 43, par. 120(14)) prohibiting law-enforcing public officials, as defined, from being "interested in any way, either directly or indirectly, in the manufacture, sale or distribution of alcoholic liquor." Pecuniary interest in such an enterprise, said the court, need not be proprietary to come within the statute's prohibitions. To hold that the officer did not have such an interest "would be to close our eyes to the natural and probable sharing of assets and liabilities which constitutes a characteristic of the family unit as it is known in our society." 3 Ill. App. 3d 691, 693, 279 N.E.2d 464, 466.

Without questioning the result in *Bock*, which was undoubtedly rightly decided, we think that its special facts, its posture on appeal, and the considerations of policy underlying the statute there involved so distinguish that case from the one at bar that it has little persuasive value. In any event, *Bock*—the narrow holding of which was that the decision of

the board was not against the manifest weight of the evidence—does not stand for the broad proposition that a wife's interest in a contract is necessarily her husband's interest.

■■ Opinions of the attorney general are not binding on the courts. (*People v. Savaiano*, 66 Ill. 2d 7, 359 N.E.2d 475 (1976); *Rogers Park Post No. 108 v. Brenza*, 8 Ill. 2d 286, 134 N.E.2d 292 (1956).) They are, however, entitled to considerable persuasive weight, especially if they involve a question of first impression and their reasoning is persuasive. (*Strat-O-Seal Manufacturing Co. v. Scott*, 72 Ill. App. 2d 480, 218 N.E.2d 227 (4th Dist. 1966); *Alsen v. Stoner*, 114 Ill. App. 2d 216, 252 N.E.2d 488 (2d Dist. 1969); *City of Champaign v. Hill*, 29 Ill. App. 2d 429, 173 N.E.2d 839 (3d Dist. 1961).) The opinion cited here by the State relies exclusively on *Bock* for its reasoning. It is therefore equally unpersuasive.

■■ We think that the better view was expressed in an earlier attorney general's opinion, found at 1951 Op. Att'y Gen. 193. In response to the question whether a school board director was in violation of a statute prohibiting his having an interest in a contract made by the board (Ill. Rev. Stat. 1949, ch. 122, par. 6—14) when his wife had such a contract, the attorney general cited the Married Women's Act and continued:

> "* * * [W]hile the cases are comparatively few, the great weight of authority is that relationship with a public officer will not invalidate a contract unless it can be proven that the public officer has a pecuniary interest in the contract.
>
> It is a rule of law that one cannot do indirectly that which is directly prohibited. Therefore, if the wife of a school board member enters into a contract with the school board as a subterfuge and the contract was in fact for the benefit of her husband, then such a contract would be invalid. * * *
>
> In view of the foregoing, I am of the opinion that the wife of a school board member may enter into a valid contract with the school board, provided the husband has no pecuniary interest in the contract and it is not being entered into as a subterfuge for the actual benefit of the husband." 1951 Op. Att'y Gen. at 194.

As the attorney general indicated, in almost every instance when the question has been presented to the courts of the various jurisdictions, the mere fact of relationship, without more, has been held to have no disqualifying effect. (See Annot., 74 A.L.R. 792 (1931); L. Ancel, *Municipal Contracts*, 1961 U. Ill. L.F. 357, 365-74.) In 63 C.J.S. *Municipal Corporations* § 991, at 557 (1950), it is stated without qualification that a municipal officer has a sufficient interest to invalidate a municipal contract with his wife. We would not, however, read any of the four cases cited for this proposition as broadly as the encyclopedist. *Sturr v. Borough of*

*Elmer,* 75 N.J. L. 443, 67 A. 1059 (1907), involved the purchase of land by a borough from the wife of a member of the borough council. The court held that the councilman was at least indirectly interested in the contract, where although the legal title of the property was in the wife's name, the husband paid the taxes, and he conducted the negotiations for the sale and fixed the price. The fact that the conveyance was finally made by the wife and her husband to a third party, who the next day conveyed to the borough, did not alter the true character of the transaction. *Woodward v. City of Wakefield,* 236 Mich. 417, 210 N.W. 322 (1926), was a similar case, involving a sale of real estate to a city by the wife of the mayor. The evidence indicated that the mayor prepared the contract without submitting it to the city attorney, and cast a necessary vote approving the transaction in the city council; his wife knew and cared little about her property affairs, which she allowed her husband to manage; and the mayor was benefited when the down payment received from the city was used to discharge his endorsements on the notes secured by mortgages on the property. In *Beakley v. City of Bremerton,* 5 Wash.2d 670, 105 P.2d 40 (1940), the question whether a city attorney could employ his wife as stenographer was decided on the grounds that the property acquired as a result of the wife's employment was community property under the laws of Washington. Finally, in *Githens v. Butler County,* 350 Mo. 295, 165 S.W.2d 650 (1942), the most recent case cited for the proposition, the wife of a judge of the county court purchased land from the county at a private sale authorized and approved by the vote of her husband and his two associate judges. After pointing out that the husband's dower in his wife's real estate gave him a beneficial interest in the property, the court said that in any event such a transaction was against public policy because it placed the judge in a position which might become antagonistic to his public duty. Compare our Supreme Court Rule 61(c)(12) Ill. Rev. Stat. 1975, ch. 110A, par. 61(c)(12), and Canon 3C(1)(c) and (d) of the Code of Judicial Conduct of the American Bar Association (1972).

■■ We think none of these cases weakens the general rule that the wife's interest is not necessarily the husband's interest, provided the contract is not a mere subterfuge for his own pecuniary interest. (For an extreme example of such a subterfuge contract, *see Brennan v. Purington Paving Brick Co.,* 171 Ill. App. 276 (1st Dist. 1912).) The rule remains that "the interest in a contract which disqualifies a public officer from executing such a contract in his official capacity * * * must be certain, definable, pecuniary, or proprietary." (*Panozzo v. City of Rockford,* 306 Ill. App. 443, 456, 28 N.E.2d 748, 654 (2d Dist. 1940); L.Ancel, *Municipal Contracts,* 1961 U. Ill. L.F. at 370, 373.) We interpret "indirect interest" to refer to the interest of the official, such as ownership of stock or a

beneficial interest in a trust, not the individual interest of another to whom the official is related. The language is intended to prevent imaginative schemes by which an official might veil his interest from public view.

■■ We must return to the question whether the indictments here charged an offense. We do not think that they did. Without more specific particularization of the type of pecuniary interest defendant was alleged to have in his wife's employment contract, he had no way of knowing with what he was charged. *People v. Isaacs*, 37 Ill. 2d 205, 212-13, 226 N.E.2d 38, 42-43 (1967); *cf. People v. Adduci*, 412 Ill. 621, 108 N.E.2d 1 (1952).

Our determination is reinforced by the fact that when the General Assembly has intended to forbid public bodies to contract with relatives of officials, it has had no difficulty in drafting such legislation. Note, for a few examples, section 11—1 of the Illinois Purchasing Act (Ill. Rev. Stat. 1975, ch. 127, par. 132.11—1), which makes it "unlawful for any person holding an elective office in this State * * * *or who is the wife, husband or minor child of any such person*" to have the prohibited interest; section 23 of the Metro-East Exposition and Performing Arts Authority Act (Ill. Rev. Stat. 1975, ch. 85, par. 1523), and section 25 of the Decatur and Danville Civic Centers Act (Ill. Rev. Stat. 1975, ch. 85, par. 1575), both of which prohibit board members, officers, employees, *"and their relatives within the fourth degree of consanguinity by the terms of the civil law"* from being interested directly or indirectly in contracts of the agencies involved; *see also* Ill. Rev. Stat. 1975, ch. 63, par. 15.3, forbidding members of the General Assembly from authorizing payments for supplies or services to anyone who is the member's *"spouse, parent, grandparent, child, grandchild, aunt, uncle, niece, nephew, brother, sister, first cousin, brother-in-law, sister-in-law, mother-in-law, father-in-law, son-in-law, or daughter-in-law."* (Emphasis added.)

■■ ■ The statute under which these indictments were brought reflects the "strong public policy against self-dealing by public officials." (*People v. Savaiano*, 31 Ill. App. 3d 1049, 1057, 335 N.E.2d 553, 559 (2d Dist. 1975), *aff'd*, 66 Ill. 2d 7, 359 N.E.2d 475. It has been called "a classic conflict of interest statute." (*United States v. Keane*, 522 F.2d 534, 555-56 (7th Cir. 1975).) Such statutes are merely declaratory of the common law principle making illegal contracts in which one party acts in breach of his duty of loyalty. (*Panozzo v. City of Rockford; Huszagh v. City of Oakbrook Terrace*, 41 Ill. 2d 387, 243 N.E.2d 831 (1969); *cf. Sherlock v. Winnetka*, 59 Ill. 389 (1871).) As one commentator has explained the rationale,

"* * * [P]ublic officers are in a fiduciary relation to the government which employs them. When a representative of a

public body is influenced in his official acts by any personal interest, * * * he is no longer acting solely for the public, which is his duty." (L. Ancel, *Municipal Contracts*, 1961 U. Ill. L.F. at 366.)

Our supreme court has recently re-emphasized that the statute should not be given an unduly narrow reading:

"* * * [I]t is aimed not only at the actual bad faith abuse of power for an officer's own personal benefit, but is also designed to prevent the creation of relationships which carry in them the potential of such abuse, by removing the possibility of temptation." (*Brown v. Kirk*, 64 Ill. 2d 144, 151, 355 N.E.2d 12, 16 (1976), *rev'g* 33 Ill. App. 3d 477, 342 N.E.2d 137 (5th Dist. 1975); *cf. People v. Savaiano*.

██ Nevertheless, the purpose of all statutory construction is to give the law the effect that was intended by the legislature. (*People v. Savaiano*.) We have found no cases interpreting this statute which did not involve some kind of self-dealing bordering on fraud. The indictments here did not charge that the defendant did anything other than hold the office of mayor while his wife worked for the water department. We cannot believe that the General Assembly intended to make a felon of a mayor who happens to be married to someone who works for his city, a fact undoubtedly known to the citizens of Hurst. We therefore affirm the orders of the Circuit Court of Williamson County dismissing these indictments for failure to state an offense.

Affirmed.

CARTER, P. J., and EBERSPACHER, J., concur.