HOUSING AUTHORITY OF THE CITY OF NEW HAVEN ET AL. *v.* DONALD T. DORSEY, COMMISSIONER, DEPARTMENT OF COMMUNITY AFFAIRS, ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued December 6, 1972—decided January 18, 1973

*Ronald J. Fracasse,* with whom were *Donald E. Cobey* and, on the brief, *Charles W. Dibbell,* for the appellants (plaintiffs).

*John K. Jepson,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellees (named defendant et al.).

BOGDANSKI, J.  In this action for a declaratory judgment and injunctive relief, the plaintiffs, the Housing Authority of the city of New Haven, Polly Moorer and Joseph R. Peters, are seeking an adjudication as to whether Moorer and Peters, tenants of the housing authority, are each legally qualified to hold the position of housing commissioner of the plaintiff housing authority.  The trial court found that the plaintiff tenants are not legally qualified to hold these positions and rendered a declaratory judgment to that effect, from which the plaintiffs have appealed to this court.

In the first two assignments of error the plaintiffs claim:  (1) that the court erred in refusing to find material facts set forth in certain paragraphs of the draft finding which they claim were admitted or undisputed and (2) that the court erred in finding facts contained in certain paragraphs of the finding without evidence.  Since the plaintiffs failed to brief these assignments of error pertaining to

the finding, they are treated as abandoned. *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495; *State* v. *Benson,* 153 Conn. 209, 217, 214 A.2d 903.

The remaining assignments of error challenge the conclusions reached by the court on the basis of facts found and present the basic issue as to whether the trial court erred in finding that a housing authority tenant may not serve as a commissioner of that housing authority because such service would create a conflict of interest under § 8-42 of the General Statutes and under the common law.

The facts can be summarized as follows: On April 12, 1971, the attorney general of the state of Connecticut issued a legal opinion to the effect that the law bars a tenant of a housing authority from serving as a commissioner of the housing authority in whose project he resides. Based on this opinion the defendant Donald T. Dorsey, Commissioner of the Department of Community Affairs of the state of Connecticut, withheld substantial sums of money from the plaintiff housing authority because he felt that the board of commissioners of the housing authority was improperly constituted. This action then was instituted.

The plaintiff housing authority was organized and created by resolution of the board of aldermen of the city of New Haven pursuant to chapter 128 of the General Statutes, § 8-38 et seq. The plaintiff-tenants, Moorer and Peters, and the other commissioners of the plaintiff authority were appointed by the mayor of New Haven.

The plaintiffs claim that Moorer and Peters were eligible, under Connecticut law, to be appointed commissioners and, having been duly appointed, are legally qualified to act as commissioners in all

respects, with the same powers and rights as commissioners who are not tenants of the housing authority. The plaintiffs further contend that by virtue of applicable federal housing statutes and contracts entered into thereunder, the constitutional doctrine of federal supremacy requires that Connecticut law bow to federal provisions which, they claim, provide that tenants shall be eligible to serve as commissioners of housing authorities. The plaintiffs further assert that constitutional provisions bar discrimination against tenants with respect to their eligibility to be appointed and serve as commissioners of public housing authorities.

The trial court concluded that tenants could control the operation of the plaintiff housing authority when a base quorum is present and the quorum includes the two tenant commissioners, that a conflict-of-interest problem exists even when only one commissioner is a tenant, and that this is so even though a tenant commissioner acts in good faith, since a person cannot serve himself as both landlord and tenant. The court further found that the failure of the legislature to amend § 8-42[1] after the date of the attorney general's opinion relating thereto was an acquiescence by the legislature to that opinion; that state law and local policy govern the ques-

---

[1] "[General Statutes] Sec. 8-42. COMMISSIONERS AND EMPLOYEES TO HAVE NO INTEREST IN PROJECT. No commissioner or employee of an authority shall acquire any interest, direct or indirect, in any housing project or in any property included or planned to be included in any project, nor shall he have any interest, direct or indirect, in any contract or proposed contract for materials or services to be furnished or used in connection with any housing project. If any commissioner or employee of an authority owns or controls an interest, direct or indirect, in any property included or planned to be included in any housing project, he shall immediately disclose the same in writing to the authority and such disclosure shall be entered upon the minutes of the authority. Failure so to disclose such interest shall constitute misconduct in office."

tion whether a tenant of a public housing authority, subsidized by federal funds, may at the same time be a commissioner of that housing authority, and that the provisions of 42 U.S.C. § 1401 do not prohibit the state of Connecticut from barring any person from serving as a commissioner of the plaintiff authority because of his tenancy in housing operated by that authority.

A housing authority is a public corporation created by the municipality to exercise certain delegated sovereign powers pursuant to §§ 8-40—8-81 of the General Statutes. It is governed by a board of five commissioners who are public officers. Three essential characteristics differentiate a public office from private employment: (1) an authority conferred by law; (2) a fixed term of office; and (3) the power to exercise some portion of the sovereign functions of government. An individual so invested is a public officer. *Kelly* v. *Bridgeport,* 111 Conn. 667, 670–71, 151 A. 268. His status forbids him from placing himself in a position where his private interest conflicts with his public duty. His good faith is of no moment because it is the policy of the law to keep him so far from temptation as to insure the exercise of unselfish public interest. *Low* v. *Madison,* 135 Conn. 1, 8, 60 A.2d 774. This policy is not limited to a single category of public officer but applies to all public officials. Id., 4–6. "Anything which tends to weaken . . . [public] confidence and to undermine the sense of security for individual rights . . . is against public policy." *Low* v. *Madison,* supra, 9; *Stocker* v. *Waterbury,* 154 Conn. 446, 454, 226 A.2d 514.

Within the context of this common-law standard the General Assembly has provided by statute that no commissioner of a housing authority shall ac-

quire any interest, direct or indirect, in any housing project. General Statutes § 8-42. An "interest" has been defined as having a share or concern in some project or affair, as being involved, as liable to be affected or prejudiced, as having self-interest, and as being the opposite of disinterest. *State* v. *Murtes,* 232 La. 486, 490, 94 So. 2d 446; see also *Swartout* v. *Holt,* 272 S.W.2d 756, 761 (Tex. Civ. App.).

The interests of a housing authority commissioner would center on the points at which management policies and functions of the authority come into contact with individual tenants. These include the selection and retention of tenants, the determination of rents to be charged, the services and other benefits to be furnished, and the enforcement of the rules governing the conduct and rights of the tenants. In fixing rents the commissioners must consider the payments on the principal and interest on the bonded indebtedness, the cost of insurance and administrative expenses, the amounts to be set aside in reserve for repair, maintenance and replacements, and vacancy and collection losses. General Statutes §§ 8-45, 8-72.

The task of fixing rent charges is such that a tenant commissioner might be called on to vote to increase his own rent in order to amortize and service the housing authority's debt obligation. If he is reluctant to increase rents which include his own, the housing authority might fail to pay its bonded indebtedness and permit unchecked physical depreciation of the properties. Matters on which the housing authority votes include the setting and the enforcing of its policies as to delinquent rents and the eviction of tenants. As a housing authority commissioner, a tenant would also be required to

participate in voting on decisions involving the hiring and firing of housing authority personnel who deal with him and his family from day to day.

Thus, whether or not the tenant as a housing authority commissioner is in fact benefiting himself individually by his vote, his personal interests are always directly or indirectly involved in his vote on the commission. This is not to say that his personal interests are inevitably and on all occasions antagonistic to the interests of the housing authority. The fact, however, that he is a tenant makes it possible for his personal interests to become antagonistic to the faithful discharge of his public duty. 10 McQuillin, Municipal Corporations (3d Ed. Rev. 1966) § 29.97.

It is thus clear that tenants, acting as housing authority commissioners, could control the operation of a housing authority. We, however, construe the legislature's failure to amend § 8-42 after the attorney general's opinion that the statute barred tenants from being commissioners as an indication of legislative intent that tenants should not be placed in a position where they could control housing authorities in whose properties they were tenants.

As already noted, the plaintiffs have strongly urged that federal law and regulation not only authorize but require that tenants be eligible to serve as commissioners on local housing authorities.[2] The plaintiffs have been unable, however,

---

[2] The following "Policy statement" is now incorporated into § 1 of chapter 896 of the United States Housing Act of 1937, 50 Stat. 888, as amended, having been added by § 211 of the Housing and Urban Development Act of 1970, 84 Stat. 1779, 42 U.S.C. § 1401: "It is the sense of the Congress that no person should be barred from serving on the board of directors or similar governing body of a local public housing agency because of his tenancy in a low-rent housing project."

to produce any evidence to support this claim. In fact, the plaintiffs' evidence demonstrated that local policies and laws govern. Section 1401 of 42 U.S.C., entitled "Declaration of policy," purports to "vest in the local public housing agencies the maximum amount of responsibility." The addition of the sense of Congress to § 1401 on December 31, 1970, did not eliminate the above quoted policy nor did it impose any mandatory requirement.

This claim, and the assertion that constitutional provisions require that tenants be not discriminated against and treated differently from other persons with respect to their eligibility to be appointed and serve as commissioners of public housing authorities, are without merit.

Since the unchallenged findings of fact amply support the conclusions reached by the trial court, the judgment rendered by it cannot be disturbed.

There is no error.

In this opinion the other judges concurred.