CAMELLA BROWN *et al.*, Plaintiffs-Appellants, *v.* FRANK KIRK, Director of the Department of Local Government Affairs, Defendant-Appellee.

(No. 74-210; )

Fifth District—October 20, 1975.

478

JONES, P. J., dissenting.

George Parker, of Land of Lincoln Legal Assistance Foundation, Inc., of East St. Louis, for appellants.

William J. Scott, Attorney General, of Chicago (Robert G. Epsteen and Jim Lavine, Assistant Attorneys General, of counsel), for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiffs Brown, Jackson, Mayes and Stewart, tenants of the East St. Louis Public Housing Authority, filed an action for declaratory relief on their own behalf and on behalf of the class consisting of all individuals who are or will be tenants of the Authority. The complaint prayed that the circuit court declare that relevant conflict-of-interest statutes (Ill. Rev. Stat., ch. 67½, par. 5, and Ill. Rev. Stat., ch. 102, par. 3) do not preclude low-income public housing tenants from serving as commissioners on the Board of Commissioners of the Housing Authority in which they reside by reason of their status as tenants. The plaintiffs also prayed that the court declare that to deny the class eligibility is an invidious discrimination in violation of the equal protection clause of the fourteenth amendment of the United States Constitution. After submission of briefs and oral argument on the above issues, the court entered judgment for the defendant finding that plaintiffs were precluded from serving as commissioners by reason of the above statute.

Our consideration of the conflict-of-interest issue leads us to conclude that the cause must be reversed. We therefore do not reach plaintiffs' constitutional argument.

The mayor of East St. Louis, the presiding officer of the city, is authorized to appoint a commissioner, subject to the approval of the Department of Local Government Affairs, at the expiration of the term of each commissioner or in the event of a vacancy. (Ill. Rev. Stat., ch. 67½, par. 3; ch. 127, par. 63b14.3.) Section 3 of the Housing Authorities Act (Ill. Rev. Stat., ch. 67½, par. 3) requires that each of the five commissioners be a resident of the area of operation of the housing authority, not be a member of the defendant department, and that no more than two individuals who are public officials serve as commissioners. In May, 1970, Charles Franklin, a tenant of the Housing Authority, was appointed to a two-year term as commissioner. He has served his term in that office.

On December 11, 1972, the mayor nominated Dorothy Holmes, also a tenant of the Housing Authority. The nomination was pending as of September 6, 1973, when the Attorney General of Illinois issued an opinion that section 5 of the Housing Authorities Act (Ill. Rev. Stat., ch. 67½, par. 5) is to be interpreted to exclude tenants of a public housing project from eligibility status to serve as commissioners of their housing authority. The defendant therefore withheld approval of Holmes and took the position that an eligible nontenant replacement be found for Charles Franklin. The defendant also decided that the general conflict-of-interest statute (Ill. Rev. Stat., ch. 102, par. 3), in addition to section 5 of the Housing Authorities Act (Ill. Rev. Stat., ch. 67½, par. 5), barred a tenant from serving as a commissioner.

The Housing Authorities Act (Ill. Rev. Stat., ch. 67½, par. 1 et seq.) contains its own conflict-of-interest provision:

> "§ 5. No commissioner or employee of an authority shall acquire any interest direct or indirect in any project or in any property included or planned to be included in any project, nor shall he have any interest direct or indirect in any contract or proposed contract for materials or services to be furnished or used in connection with any project. If any commissioner or employee of any authority owns or controls an interest direct or indirect in any property included in any project, which was acquired prior to his appointment or employment, he shall disclose the same in writing to the Authority and such disclosure shall be entered upon the minutes of the Authority." (Ill. Rev. Stat. 1973, ch. 67½, par. 5.)

There are no reported Illinois judicial decisions construing the statute. The Attorney General construed the statute in the following manner:

> "It is a cardinal rule of construction of Illinois statutes that a statute must be construed so as to ascertain and give effect to the intention of the General Assembly as expressed in the statute (*Lincoln National Life Insurance Co. v. McCarthy*, 10 Ill.2d 489).

Courts will apply to words appearing in legislative enactments the common dictionary meaning or commonly accepted use of the words unless the words are otherwise defined by the General Assembly. (*Bowes v. City of Chicago*, 3 Ill.2d 175.) The word 'interest' is defined in Webster's New International Dictionary, Second Edition, as being a right, title, share or participation in a thing. Certainly a lease would be a share or participation in the housing project. Statutes should be read according to the natural import of language, without resort to subtle or forced constructions. (*People v. Shader*, 326 Ill. 145.) I am, therefore, of the opinion that section 5 of the 'Housing Authorities Act' prohibits and precludes a tenant (even under a preexisting lease or rental agreement) from being a commissioner of that Authority.

A tenant in a housing project receives a certain economic advantage. He receives his housing and pays his rent according to his rent according to his ability to pay. It would be contrary to the spirit and intent of the 'Housing Authorities Act' if a tenant (even under a preexisting lease or rental agreement) could also be a commissioner of that Authority. The spirit or intention of the law prevails over the letter thereof. (*U.S. Industrial Alcohol Co. v. Nudelman*, 375 Ill. 342; *People v. Dear*, 286 Ill. 142.)" Ill. Atty. Gen. Op. File No. NP-612, 1973.

The precise issue in this case was decided by the Supreme Court of Connecticut in *Housing Authority v. Dorsey* (1973), 164 Conn. 247, 320 A.2d 820. Construing a provision identical to section 5 of the Housing Authorities Act (Ill. Rev. Stat., ch. 67½, par. 5) the court held that a tenant of a housing authority was precluded from serving as a commissioner of the authority because such service would create a conflict of interest.

The defendant, Kirk, also decided that a tenant was barred by the general conflict of interest statute:

"§ 3. No person holding any office, either by election or appointment under the laws or constitution of this state, may be in any manner interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of while such officer may be called upon to act or vote. * * * Any contract made and procured in violation hereof is void." (Ill. Rev. Stat. 1973, ch. 102, par. 3.)

The trial court held both conflict of interest statutes applicable to the plaintiffs, basing its decision on *Dorsey*.

Section 5 of the Housing Authorities Act (Ill. Rev. Stat., ch. 67½,

par. 5) appears on its face to be unambiguous: "No commissioner * * * shall acquire any interest direct or indirect * * * in any property included * * * in any project * * *." In keeping with an intent to have officials free of conflicts of interest, "interest" was defined by the Attorney General to include "any right, title, share or participation in a thing." While we think this definition is so broad as to be itself ambiguous, we will assume for the purposes of argument that a lessee's rights or participation come within the purview of "interest." Close examination of the provision, however, reveals a definite ambiguity. The clear import of the provision is that no commissioner shall procure any interest in a project or property of the Authority. An incumbent commissioner may not acquire an interest, but the sentence does not speak to a preexisting interest of a commissioner. The second sentence requires that such an interest be disclosed in writing to the Authority and entered upon its minutes. There is no language of eligibility or disqualification. Considering the provision as a whole, a fair and reasonable construction is that the General Assembly intended to allow the appointment of interested commissioners so long as the commissioner disclosed his interest. This standard is not unreasonable or illogical. While the legislature apparently desired to absolutely prohibit the acquisition of any interest by incumbent commissioners, it was decided that the disclosure provision was an adequate safeguard to allow persons with preexisting interests to serve as commissioners. The General Assembly might have determined that all commissioners be completely disinterested. While the legislature apparently desired to absolutely prohibit the acquisition of any interest by incumbent commissioners, it was decided that the disclosure provision was an adequate safeguard to allow persons with preexisting interests to serve as commissioners. The implied legislative determination that conduct resulting in possible conflicts of interest must be more strictly controlled among serving officials seems to us to be eminently reasonable. The General Assembly might have required, as does the opinion of the Attorney General, that all commissioners be completely disinterested. The statute in question makes no such demand.

■■ The defendant argues that the trial court correctly relied on *Dorsey* in finding that section 5 of the Housing Authorities Act (Ill. Rev. Stat., ch. 67½, par. 5) barred the appointment of tenants. As stated above, in *Dorsey* the Connecticut Supreme Court construed a statute identical to the Illinois provision to preclude the appointment of tenants. The court did not directly consider the whole statute. Rather, it concentrated on the first sentence as did the Illinois Attorney General and construed it within the context of the common law of Connecticut. A comissioner was held to be a public officer, thus:

"His status forbids him from placing himself in a position where his private interest conflicts with his public duty. His good faith is of no moment because it is the policy of the law to keep him so far from temptation as to insure the exercise of unselfish public interest. Low v. Madison, 135 Conn. 1, 8, 60 A.2d 774. This policy is not limited to a single category of public officer but applies to all public officials. Id., 4—6." (164 Conn. 247, 251, 320 A.2d 820, 822.)

The court then proceeded to find that a tenant commissioner would inevitably be "interested" within the above standard. While it is axiomatic that statutes are to be construed in harmony with existing law (34 Ill. L. & Pr. *Statutes* § 130 (1958)), the defendant has not shown nor have we found any Illinois authority which establishes as strict a standard as Connecticut for conflicts of interest. (See *Panozzo v. City of Rockford*, 306 Ill.App. 443, 28 N.E.2d 748.) More important, the court in *Dorsey* appears to have disregarded the second sentence of the statute regarding disclosure by a commissioner with a preexisting interest.

The trial court, while relying heavily on *Dorsey*, also based its opinion on the general conflict-of-interest statute (Ill. Rev. Stat., ch. 102, par 3), and the cases interpreting it. After having decided on the basis of *Dorsey* that a tenant commissioner would be interested within the meaning of section 5 of the Housing Authorities Act (Ill. Rev. Stat., ch. 67½, par. 5) and the general conflict-of-interest statute (Ill. Rev. Stat., ch. 102, par. 3), it concluded that under the latter statute that any contract entered into by a housing authority which included a tenant commissioner would be void.

■■ We disagree. In our opinion plaintiffs as tenants in the Housing Authority are not persons interested directly or indirectly in the letting of any contracts for the performance of work within the meaning of the general conflict-of-interest statute (Ill. Rev. Stat., ch. 102, par. 3). Their status as tenants does not give them any interest, financial or otherwise, in the business and welfare of parties with whom the Housing Authority may contract. The interest in a contract prohibited by the general conflict-of-interest statute means a personal gain the official may obtain by voting in favor of a particular contracting party. In other words, he must stand to lose or gain in some way by the awarding of a particular contract. Conflict of interest means there must be a conflict between his status as a tenant and his duties as a commissioner. No such conflict exists because plaintiffs would not stand to gain or lose any more in the awarding of a contract than any other commissioners. The test or standard by which to determine whether the conflict does exist is whether the "indirect interest" of the official in the business and welfare of the other contracting party is such as naturally tend to affect his judgment in his determina-

tion to let the contract. (*Panozzo v. City of Rockford*, 306 Ill.App. 443, 28 N.E.2d 748.) No such interest exists. As a tenant he would not be inclined to favor anyone. In fact, he might be less inclined to be prejudiced than people serving on the commission who have the same economic status as those with whom they are contracting. Any economic gain a tenant would derive from the awarding of a contract would be shared with other tenants who are eligible for public housing because of their economic status. This is not the type of interest contemplated by the general conflict-of-interest statute. The conflict-of-interest theory is based on the fact that an individual occupying a public position uses the trust imposed upon him and the position he occupies to further his own personal gain and it is the influence he exerts in his official position to gain personally in spite of his official trust which is the evil the law seeks to eradicate.

Illinois courts have interpreted the general conflict-of-interest statute (Ill. Rev. Stat., ch. 102, par. 3) to necessitate a showing of pecuniary or financial interest.

> "We find no cases which were decided under any other rule than that the interest in a contract which disqualifies a public officer from executing such a contract in his official capacity, must be pecuniary. * * * [S]uch interest must be certain, definable, pecuniary or proprietory. The interest must be financial." *Panozzo v. City of Rockford*, 306 Ill.App. 443, 456.

■■ In order to disqualify plaintiffs, the Attorney General gave the broadest possible construction to the statutes in question and thereby violated the rule that statutes imposing disqualifications should be construed strictly, while those declaring qualifications should be construed liberally. (*Livingston v. Ogilvie*, 43 Ill.2d 9, 250 N.E.2d 138; 63 Am. Jur. 2d *Public Officers & Employees* § 38, at 650 (1972).) Every doubt or ambiguity must be resolved in favor of eligibility. *Ervin v. Collins* (Fla. 1956), 85 So.2d 852, 59 A.L.R.2d 706.

■■ The purpose of the general conflict-of-interest statute (Ill. Rev. Stat,. ch. 102, par. 3) is not to deny a class of individuals public office; rather it is to deter a public officer from participating in official decisions which would benefit him financially to the prejudice of those whom he is to serve. This was made clear in *Livingston v. Ogilvie*, where the court said at 43 Ill.2d 9, 17:

> " "* * * The right to hold office is a valuable one and its exercise should not be declared prohibited or curtailed except by plain provisions of the law. And the rule that provisions imposing disqualifications should be strictly construed is applicable to those which prohibit dual office holding. They should not be extended by implications beyond the office or offices expressed or to persons

not clearly within their meaning. In other words, they should be construed in favor of eligibility.

'The prohibition against one person holding more than one office at the same time has reference to officers, as distinguished from positions in the public service that do not rise to the dignity of offices.' 42 Am. Jur., Public Officers, sec. 61."

We would stress that neither conflict of interest statute under consideration here contains any words of disqualification or establishes any qualification for the office of commissioner of a public housing authority. Conflict of interest statutes, on analysis, are usually found to be disclosure statutes requiring office holders, appointed public officials and those whose duties involve the expenditure of public funds, to disclose the ownership of assets and the existence of relationships that place them in a position where their self-interest could conflict with the disinterested discharge of their official duties, thereby violating the trust and confidence reposed in them. Another type of conflict-of-interest statute proscribes certain activities of these persons in positions of public trust.

The Housing Authorities Act (Ill. Rev. Stat. 1973, ch. 67½, par. 1 *et seq.*) sets forth the powers and duties of commissioners, including the investigation of housing conditions and the need for safe, decent and sanitary housing for individuals of limited income or wealth; the acquisition of real property for housing projects and the financing of these projects by the sale of bonds; the operation and maintenance of housing projects and the establishment of rental rates; and the hiring of employees.

It is difficult to imagine that a tenant commissioner's interest would be any different from any nontenant commissioner selected from the citizenry. If in a rare instance a tenant commissioner would be called upon to vote on a matter of personal financial interest, the conflict of interest problem could be solved by a withdrawal from discussion and voting in the particular instance. (See, *e.g.*, 62 C.J.S. Municipal Corporations § 402 (1949).) One of the duties of a commissioner is to establish rental rates sufficient to maintain and operate housing project properties and to retire bonded indebtedness. Section 4 of the Act (Ill. Rev. Stat., ch. 67½, par. 4) provides for the removal for cause of any commissioner by the Department of Local Governmental Affairs who is found incompetent or guilty of neglect of duty or malfeasance. This provision would appear to provide adequate sanctions in the event that a tenant commissioner would prefer his self-interest to his statutory duties. We should note that many of the powers of the Board of Commissioners are subject to approval by other governmental entities. Ill. Rev. Stat., ch. 67½, par. 13.

Our decision is consistent with the federal low rent housing law to "remedy the unsafe and unsanitary housing conditions and acute shortage of decent, safe, and sanitary dwellings for families of low income * * *." Local public housing authorities are authorized and obligated to provide decent housing at low rents to low income individuals. The obvious self-interests of any public housing tenant coincide with these legislative purposes.

The United States Congress has on more than one occasion expressed its opinion that the implementation of the goals of the Housing Act of 1937 can best be accomplished with the full participation of tenants as advisors to and participants in the decision-making processes of the local housing authorities. Federal funds for modernization of housing projects, are granted subject to the active participation of tenants as advisors to the housing authority with respect to modernization needs and priorities. (Low Rent Housing Handbook, R.H.A. 7485.1(3)b).

In 1971 Congress amended the preamble of the Housing Act of 1937 by adding:

> "It is the sense of the Congress that no person should be barred from serving on the board of directors or similar governing body of a local public housing agency because of his tenancy in a low-rent housing project." (42 U.S.C. 1401.)

The legislative history reveals that Congress had become aware that several States had barred tenants from the position of housing commissioner, and that Congress considered it inappropriate for a State to bar a tenant for reasons of a conflict of interest. (Senate Report No. 91-1216).

██ A tenant is well qualified to attest to the legitimate needs of low-income tenants, the intended primary beneficiaries of this governmental program. Who is better qualified than a tenant to judge the quality of maintenance, sensitivity of management to social problems, and the community need for additional low-rent housing? These are all significant issues to which Housing Commissioners should be cognizant, given their mandate from the United States Congress and the Illinois Legislature. Unlike private landlords, public housing commissioners have no need or purpose to make a profit from tenants. The United States Congress has expressed its opinion that these purposes can best be accomplished by the inclusion of tenants on housing boards as commissioners.

The judgment of the trial court finding the plaintiffs ineligible to serve as commissioners of the Housing Authority in which they reside is reversed.

Judgment reversed.

KARNS, J., concurs.

Mr. PRESIDING JUSTICE JONES, dissenting:

The majority has inexplicably chosen to ignore the concluding independent clause of the statutory sentence they have analyzed. That concluding clause provides, "\* \* \* nor *shall he have* any interest, direct or indirect, in any contract or proposed contract for materials or services to be furnished or used in connection with any project." (Emphasis added.) In my opinion this clause renders completely nugatory the reasoning of the majority and I respectfully dissent.

The court in *Housing Authority v. Dorsey* (1973), 164 Conn. 247, 320 A.2d 820, construed a provision identical to the statute considered by the majority and arrived at a contrary result. Understandably so since they considered the entire statute. I believe the reasoning in the *Dorsey* case was correct and that the result in this case should have been the same.

Disqualification for office because of conflicts of interest permeates our system of law and government and it would add nothing to attempt a compilation of the areas of conflict here. Disqualification is specified for the fundamentally sound reason that conflicts of interest spawn biased decisions. I see the case for the two individuals who are the beneficiaries of the majority decision as being little, if any, different from that of a judge who presides in a trial in which he is personally interested in the outcome.