Peter B. SHORESMAN and Michele W. Shoresman, Plaintiffs,

v.

James R. BURGESS, Jr., in his capacity as State's Attorney of Champaign County, Illinois, Defendant.

No. 76–2–035.

United States District Court, E. D. Illinois.

May 7, 1976.

J. Steven Beckett, Reno, O'Byrne & Kepley, Champaign, Ill., for plaintiffs.

Mark D. Lipton, Asst. State's Atty., Urbana, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

WISE, Chief Judge.

This matter comes before the Court on plaintiffs' petition for injunctive relief restraining defendant from enforcing Sections 3 and 4 of the Illinois Corrupt Practices Act, Ill.Rev.Stat. ch. 102, §§ 3, 4 (1975) and Section 10–9 of the Illinois School Code, Ill.Rev.Stat. ch. 122, § 10–9 (1975). Plaintiffs further seek declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 against the operation of these statutes as being violative of their rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments and 42 U.S.C. § 1983.

Jurisdiction is predicated upon 28 U.S.C. § 1343. In conjunction with their prayer for injunctive relief, plaintiffs seek the convention of a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284.

A hearing was held on April 1, 1976, after which the Court took the matter under advisement pending the submission of additional briefs. Defendant has subsequently filed a motion to dismiss and/or for summary judgment. Having considered the briefs, affidavits, arguments of counsel, and the applicable law, the Court finds that plain-

tiffs' claim for injunctive relief should be denied but that their prayer for a declaratory judgment should be allowed. To the extent that defendant challenges plaintiffs' standing to sue and the existence of a justiciable case and controversy, his motion to dismiss and/or for summary judgment should be denied. In all other respects, defendant's pleadings shall be considered as being in opposition to plaintiffs' prayer for injunctive and declaratory relief.

## Findings of Fact

1. Plaintiff PETER B. SHORESMAN, a resident of Champaign County, Illinois, is a professor within the College of Education at the University of Illinois and has been so employed since 1964. Since 1971, Mr. Shoresman has also served as an elected member of the Board of Education, Community School District # 4, Champaign, Illinois. Plaintiff MICHELE W. SHORESMAN, a resident of Champaign County, Illinois, has been employed since 1971 as a schoolteacher in Community School District # 4 and has been a member of the Champaign Education Association—the teachers' collective bargaining organization. Plaintiffs have been married since June, 1975.

2. Ill.Rev.Stat. ch. 102, § 3 provides in part:

"No person holding any office, either by election or appointment under the laws or constitution of this state, may be in any manner interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. . . . Any contract made and procured in violation hereof is void."

Ill.Rev.Stat. ch. 102, § 4 provides:

"Any alderman, member of a board of trustees, supervisor or county commissioner, or other person holding any office, either by election or appointment under the laws or constitution of this state, who violates any provision of the preceding sections, is guilty of a Class 4 felony and in addition thereto, any office or official position held by any person so convicted shall become vacant, and shall be so declared as part of the judgment of court."

Ill.Rev.Stat. ch. 122, § 10–9 provides:

"Any board member who is interested in a contract made by the board of which he is a member shall be guilty of a Class A misdemeanor."

3. On November 10, 1975, the Champaign Unit # 4 School Board voted approval of the teachers' employment contract with the Champaign Education Association. At this meeting, Peter Shoresman advised the other board members of his marital relationship and abstained from voting on the contract, which subsequently received unanimous approval from all other board members.

4. Defendant JAMES R. BURGESS, JR. is the elected State's Attorney for Champaign County, Illinois. Since plaintiffs' marriage in June, 1975, plaintiffs allege that defendant has attempted to force Peter Shoresman's resignation from the school board in violation of their constitutional rights. Defendant asserts that he has done nothing more than attempt to enforce the abovementioned statutes in good faith in his capacity as State's Attorney. The facts reveal that defendant filed a civil action against Peter Shoresman in the Circuit Court of Champaign County seeking a declaratory judgment that Mr. Shoresman's presence on the school board constituted a conflict-of-interest, an order declaring that he be removed from the board or that he be enjoined from participation on the board so long as his spouse was a schoolteacher in Unit # 4, and a declaration of the rights of the parties. In March, 1976, the Circuit Judge entered judgment in Peter Shoresman's favor on the grounds that additional parties defendant should have been joined. The judge found that he was unable to order Mr. Shoresman removed from the board in a civil proceeding and that such an order was warranted only upon a criminal conviction. *People v. Shoresman,* No. 75–

L–887 (Cir.Ct. Champaign County, Ill., Mar. 1, 1976). Defendant subsequently made several public statements to the effect that additional action by the State's Attorney's Office was anticipated in the *Shoresman* case. In addition, Mr. Burgess advised the Superintendent of the Champaign County Educational Service Region to notify all board members of the *Shoresman* case and to recommend that they appraise their own positions in light of the conflict-of-interest statutes. Thereafter, defendant caused subpoenas to be issued to Michele Shoresman and officers of both the school district and the teachers' association ordering them to appear before a county grand jury on April 22, 1976. Although plaintiffs seek a temporary restraining order to prevent defendant from presenting evidence on this matter before the grand jury on April 22nd, the defendant has assured the Court that he will maintain the status quo and refrain from instituting any criminal proceedings against Mr. Shoresman pending the final disposition of this case.

### Conclusions of Law

#### I. Jurisdiction

The Court has jurisdiction over both the parties and the subject matter of this action. 28 U.S.C. § 1343. In the absence of any pending state criminal proceedings against plaintiffs, the Court may consider their prayer for both injunctive relief, *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), and declaratory relief, *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

#### II. Standing and Justiciability

■ Upon a review of all the pleadings, exhibits, and affidavits submitted by the parties, the Court finds that plaintiffs possess standing to sue and that a clear justiciable case and controversy exists. Although the threat of criminal action appears to be directed primarily towards Peter Shoresman, the Court is of the opinion that Michele Shoresman has a substantial interest in the outcome of this case since a finding that her husband is subject to the conflict-of-interest statutes may necessitate either her husband's resignation from the school board or her own resignation from the Unit # 4 school district.

The facts reveal that Peter Shoresman, as a member of the Unit # 4 school board, is a public official subject to the provisions of Ill.Rev.Stat. ch. 102, §§ 3, 4 and Ill.Rev. Stat. ch. 122, § 10–9. Although he failed to vote on the collective bargaining agreement between the school board and the teachers' organization, it appears from these facts and recent state court interpretations of similar factual situations that Mr. Shoresman may have a pecuniary interest at least indirectly in the teacher contract and that he may be in a position to benefit therefrom because of his wife's employment as a schoolteacher. *See People v. Boland,* No. 75–MR–21 (Cir.Ct. Rock Isl. County, Ill., Aug. 26, 1975); *People v. Willard,* No. 74–MR–260 (Cir.Ct. Lee County, Ill., Mar. 5, 1975). *Cf. Bock v. Long,* 3 Ill.App.3d 691, 279 N.E.2d 464 (1st Dist. 1972). The Court is also cognizant of a legal opinion issued by the Illinois Office of Education on March 23, 1976 which held that a conflict-of-interest situation existed where a school board member sat on a board which employed the member's spouse. These recent legal pronouncements, when considered in conjunction with the recent actions of the Champaign County State's Attorney as set forth in paragraph 4 of the Court's *Findings of Fact,* necessitate a finding that Peter Shoresman's fear of imminent criminal prosecution is neither subjective nor speculative. Rather, he has demonstrated "a genuine threat of enforcement of a disputed state criminal statute . . . ." *Steffel v. Thompson,* 415 U.S. 452, 475, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505, 524 (1974); *Doe v. Bolton,* 410 U.S. 179, 188–189, 93 S.Ct. 739, 745, 35 L.Ed.2d 201, 210 (1973).

#### III. Injunctive Relief—Three-Judge Court

■ Plaintiffs have requested that a three-judge court be convened pursuant to 28 U.S.C. §§ 2281, 2284 to consider their prayer for injunctive relief. In determining whether or not this application is appro-

priate, the Court must consider (1) whether the constitutional issues are substantial; (2) whether the complaint at least formally alleges a basis for equitable relief; and (3) whether the case otherwise meets the requirements of 28 U.S.C. §§ 2281, 2284. *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794, 796 (1962). *See also Ex parte Poresky,* 290 U.S. 30, 31–32, 54 S.Ct. 3, 4, 78 L.Ed. 152, 153 (1933). Although plaintiffs' claims may at first blush warrant the convention of such a tribunal, the Court is mindful of the Supreme Court's admonition to avoid unnecessary referrals to three-judge courts. *See Hagans v. Lavine,* 415 U.S. 528, 543–545, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577, 591 (1974); *Rosado v. Wyman,* 397 U.S. 397, 403, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442, 450 (1970); *Swift & Co. v. Wickham,* 382 U.S. 111, 128–129, 86 S.Ct. 258, 267, 15 L.Ed.2d 194, 205 (1965); *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). Without unnecessary elaboration, the Court has considered the Supreme Court's most recent pronouncements on this issue as set forth in *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) and *Goosby v. Osser,* 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973), and, upon a review of the pleadings, finds that the plaintiffs are not entitled to the convention of a three-judge court to consider their prayer for injunctive relief.

Plaintiffs have failed to satisfy two of the three tests as set forth in *Idlewild, supra,* in that their constitutional challenge to the Illinois statutes in question fails to raise a substantial federal question. In addition, plaintiffs have failed to allege that they are in danger of suffering irreparable injury—both great and immediate—beyond "that incidental to every criminal proceeding brought lawfully and in good faith . . . ." *Douglas v. City of Jeannette,* 319 U.S. 157, 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324, 1330 (1943). *See also Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669, 676 (1971); *Watson v. Buck,* 313 U.S. 387, 401, 61 S.Ct. 962, 966, 85 L.Ed. 1416, 1423 (1941); *Fenner v. Boykin,* 271

U.S. 240, 243–244, 46 S.Ct. 492, 493, 70 L.Ed. 927, 929 (1926). As the Supreme Court stressed in *Douglas v. City of Jeannette, supra,* 319 U.S. at 163–164, 63 S.Ct. at 881, 87 L.Ed. at 1329:

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. . . . Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate.' (Citations omitted)."

## IV. *Declaratory Relief*

■ Although the Court has found that plaintiffs are not entitled to injunctive relief, a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 is a more appropriate remedy in this case since there appears to be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113, 118 (1969); *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 829 (1941). Declaratory relief in this case should serve the useful purpose of clarifying the legal relations of the parties in issue and of affording relief from the uncertainty giving rise to the present conflict. In view

of plaintiffs' desire to retain their respective positions in the Champaign school system, the Court's failure to address itself to the constitutional issues raised in plaintiffs' complaint may well force Peter Shoresman to chose "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel v. Thompson, supra,* 415 U.S. at 462, 94 S.Ct. at 1217, 39 L.Ed.2d at 516.

Plaintiffs contend that the three Illinois statutory provisions in question: (1) create a chilling effect on plaintiffs' right to marital privacy, in violation of the First, Fourth, Fifth, and Ninth Amendments; (2) fail to sufficiently warn plaintiff Peter Shoresman of the proscribed criminal conduct, in violation of the Fourteenth Amendment; (3) are unconstitutionally vague and overbroad; (4) create an irrebuttable presumption that a public official with a potential conflict-of-interest cannot hold office, in violation of the due process clause of the Fourteenth Amendment; (5) deprive plaintiff Peter Shoresman of his right to participate in government, guaranteed by the Fourteenth Amendment; and (6) fail to contain any element of criminal scienter, in violation of the due process clause of the Fourteenth Amendment.

### A.  *Right to Marital Privacy*

■ The constitutional right to privacy, first recognized in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), has been extended to protect some of the most intimate phases of marriage and personal life. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). Plaintiffs' challenge of the constitutionality of Sections 3 and 4 of the Corrupt Practices Act under this line of cases, however, must fail. The statutes struck down by the Supreme Court in the abovementioned cases were found to have intruded upon certain marital and extra-marital conduct that was clearly within the scope of the right to privacy. The statutes challenged in this case do not address themselves to such conduct, and the mere fact that they may prohibit plaintiffs from maintaining their respective positions in the Champaign school system because of their marital relationship is insufficient reason to find that a "chilling effect" on plaintiffs' right to marital privacy exists. Consequently, the challenged statutes do not abridge any of plaintiffs' constitutional rights under the First, Fourth, Fifth, and Ninth Amendments.

### B.  *Fourteenth Amendment Claims*

Plaintiffs have raised several claims under the due process clause of the Fourteenth Amendment, all of which are without foundation.

■ None of the statutory provisions challenged by plaintiffs are unconstitutionally vague or overbroad under the standards set forth in *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A basic tenet of due process requires statutory prohibitions to be clearly defined so as to be understood by men of common intelligence. However, "we can never expect mathematical certainty from our language." *Grayned, supra,* at 110, 92 S.Ct. at 2300, 33 L.Ed.2d at 228. The essence of the vagueness doctrine is that one subject to the prohibitions of a statute be given a fair warning of possible impermissible conduct. However:

"It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 590 (1972).

■ The Court finds that Section 3 of the Corrupt Practices Act fairly informs public officials of their duty to avoid becoming interested, "either directly or indirectly" in

838

contracts which may inure to their personal benefit. The Court finds further that the statute, in its regulation of the conduct of public officials, is not so overbroad as to invade the area of other constitutionally protected freedoms. *See Zwickler v. Koota,* 389 U.S. 241, 249–250, 88 S.Ct. 391, 396, 19 L.Ed.2d 444, 449 (1967).

■ Plaintiffs' claim that Section 3 fails to provide adequate warning of proscribed criminal conduct in the sense that the statute contains no element of criminal scienter is groundless. *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), cited by plaintiffs as support for this assertion, is clearly distinguishable. There, the Supreme Court struck down a California obscenity statute that was found to have an unconstitutionally indirect impact upon the First Amendment's freedom of the press. The Court specifically noted that, save for statutes whose scope could threaten the free exercise of constitutionally protected activity under the First Amendment, ". . . it is doubtless competent for the States to create strict criminal liabilities by defining criminal offenses without any element of scienter . . . ." *Smith v. California, supra,* at 150, 80 S.Ct. at 217, 4 L.Ed.2d at 209.

Plaintiffs' final argument challenges the very basis upon which conflict-of-interest statutes such as Section 3 are grounded. They assert that the challenged Illinois statutes raise an irrebuttable presumption that persons with potential conflicts-of-interest may not hold public office, thereby depriving Peter Shoresman of his constitutional right to participate in government. *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) and *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) are applicable only if such a presumption is found to be arbitrary, unreasonable, and unsupported by a rational state interest. The Court finds that such is not the case here.

■ The right to participate in government as an elected or appointed public official, while a basic freedom under our consti-

tution, is not absolute; for the liberty guaranteed under the due process clause of the Fourteenth Amendment applies to arbitrary interferences. However, the amendment does not grant plaintiffs immunity from reasonable regulations. In the present case, the state's interest in maintaining the faith of the people in their elected and appointed officials clearly outweighs the plaintiffs' interest in maintaining their present course of conduct—should it be found to be prohibited under the state's conflict-of-interest statutes. *See United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 562, 81 S.Ct. 294, 315, 5 L.Ed.2d 268, 295 (1961); *Kruse v. Streamwood Utilities Corp.,* 34 Ill.App.2d 100, 114, 180 N.E.2d 731 (1st Dist. 1962). As Mr. Justice George J. Moran of the Illinois Appellate Court recently noted:

"The purpose of the general conflict-of-interest statute (Ill.Rev.Stat., ch. 102, par. 3) is not to deny a class of individuals public office; rather it is to deter a public officer from participating in official decisions which would benefit him financially to the prejudice of those whom he is to serve." *Brown v. Kirk,* 33 Ill.App.3d 477, 483, 342 N.E.2d 137, 142 (5th Dist. 1975).

■ Sections 3 and 4 of the Illinois Corrupt Practices Act were first enacted in 1872, and the scope of these provisions has been defined in numerous decisions of the Illinois courts. *See generally School Directors v. Parks,* 85 Ill. 338 (1877); *People ex rel. Pearsall v. Sperry,* 314 Ill. 205, 145 N.E. 344 (1924); *Peabody v. Sanitary District,* 330 Ill. 250, 161 N.E. 519 (1928); *Panozzo v. City of Rockford,* 306 Ill.App. 443, 28 N.E.2d 748 (2d Dist. 1940); *Kruse v. Streamwood Utilities Corp., supra; People v. Savaiano,* 31 Ill.App.3d 1049, 335 N.E.2d 553 (2d Dist. 1975); *Brown v. Kirk, supra. Cf. People v. Adduci,* 412 Ill. 621, 108 N.E.2d 1 (1952); *Bock v. Long,* 3 Ill.App.3d 691, 279 N.E.2d 464 (1st Dist. 1972). Likewise, Section 10–9 of the Illinois School Code has remained substantially the same since it was first enacted in 1909. Ill.Laws, p. 342, § 255 (1909). After reviewing the legislative history and judicial application

of these provisions, the Court finds that they raise no arbitrary presumptions against plaintiffs' interest in local government participation as to render the statutes unconstitutional under the Fourteenth Amendment.

In holding that Sections 3 and 4 of the Illinois Corrupt Practices Act and Section 10–9 of the Illinois School Code are constitutional, the Court emphasizes that it renders no opinion regarding the applicability of these provisions in Peter Shoresman's case. That matter must be reserved for determination by the state courts. Rather, the Court reiterates that it has granted plaintiffs' prayer for declaratory relief in an effort to clarify for the parties the nature of these conflict-of-interest statutes in view of plaintiffs' desire to retain their respective positions in Champaign Community School District # 4.

IT IS THEREFORE ORDERED that plaintiffs' prayer for the convention of a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284 and for injunctive relief be, and the same are hereby, denied.