(No. 48077.-

CAMELLA BROWN *et al.*, Appellees, v. FRANK KIRK, Director of the Department of Local Government Affairs, Appellant.

*Opinion filed September 20, 1976.*

William J. Scott, Attorney General, of Springfield (Bonny Sutker Barezky and Ann Plunkett Sheldon, Assistant Attorneys General, of Chicago, of counsel), for appellant.

George L. Parker, of Land of Lincoln Legal Assistance Foundation, Inc., of East St. Louis, for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiffs, Camella Brown, Mattie Jackson, Edna Mayes, and Emma Stewart, each of whom is a tenant of the Public Housing Authority of the city of East St. Louis, filed a complaint in the circuit court of St. Clair County against Frank A. Kirk, Director of the Illinois Department of Local Government Affairs, on their own behalf and on behalf of all other tenants of the Authority. The complaint sought a declaratory judgment that the statutes of this State relating to conflict of interest do not render a tenant of a public housing authority ineligible to hold the office of commissioner of the Authority. Alternatively the plaintiffs sought a declaratory judgment that these statutes, if construed to disqualify tenants, violate the equal protection clause of the fourteenth amendment. The circuit court denied relief. On appeal, the Appellate Court for the Fifth District, with one judge dissenting, reversed (33 Ill. App. 3d 477), and we granted the defendant's petition for leave to appeal.

The Housing Authorities Act (Ill. Rev. Stat. 1975, ch. 67½, par. 1 *et seq.*) empowers cities and other units of local government to establish agencies for the purpose of constructing and operating housing projects for low-income residents of the area. Each such project is governed by a five-man board of commissioners, which enjoys broad powers in the management of the projects, including the selection of tenants and the determination of the rents to be charged. Under section 3 of the Act (Ill. Rev. Stat. 1975, ch. 67½, par. 3), the commissioners of a housing authority are appointed by the presiding officer of the local governmental entity, in this case the mayor of the city of East St. Louis, subject to the approval of the Director of the Department of Local Government Affairs.

In 1972 the mayor of the city appointed Dorothy Holmes, a tenant of the city's housing authority, to serve a two-year term as a commissioner. The defendant, on the

basis of an opinion of the Attorney General, advised the mayor to withdraw that appointment. At the same time the defendant also advised the mayor to appoint a replacement for Charles Franklin, also a tenant of the Authority, who was then serving as one of its commissioners.

Section 5 of the Act (Ill. Rev. Stat. 1975, ch. 67½, par. 5) provides:

> "No commissioner or employee of an Authority shall acquire any interest direct or indirect in any project or in any property included or planned to be included in any project, nor shall he have any interest direct or indirect in any contract or proposed contract for materials or services to be furnished or used in connection with any project. If any commissioner or employee of any Authority owns or controls an interest direct or indirect in any property included in any project, which was acquired prior to his appointment or employment, he shall disclose the same in writing to the Authority and such disclosure shall be entered upon the minutes of the Authority."

The appellate court assumed for purposes of its decision that a lessee's rights under his lease qualified as an "interest" in the project. But it considered the section inapplicable on the ground that the first sentence bars a commissioner from acquiring an interest only after his appointment as a commissioner, whereas the second sentence does not require a commissioner to divest himself of interests acquired prior to his appointment, but only to disclose their existence. The court reasoned by analogy that a person who is already a tenant of the Authority remains eligible for appointment.

However apt this distinction between a newly acquired and preexisting interest may be in cases where the question is purchase of property to be included in a project, we think that it is not appropriate in the case of a tenant, who retains a continuing contractual relationship with his landlord subject to periodic renewal. The first sentence of the section is thus applicable, in our opinion.

In *Housing Authority v. Dorsey* (1973), 164 Conn. 247, 320 A.2d 820, *cert. denied,* 414 U.S. 1043, 38 L. Ed. 2d 335, 94 S. Ct. 548, the Supreme Court of Connecticut construed an almost identical statutory provision and concluded that because of the potential conflict of interest tenants were not eligible to serve as commissioners. The opinion of the Connecticut court makes it clear that a provision such as our section 5 is to be regarded as embodying the long-standing common law doctrine that the faithful performance of official duties is best secured if a governmental officer, like any other person holding a fiduciary position, is not called upon to make decisions that may advance or injure his individual interest. The court stated:

> "The interests of a housing authority commissioner would center on the points at which management policies and functions of the authority come into contact with individual tenants. These include the selection and retention of tenants, the determination of rents to be charged, the services and other benefits to be furnished, and the enforcement of the rules governing the conduct and rights of the tenants. In fixing rents the commissioners must consider the payments on the principal and interest on the bonded indebtedness, the cost of insurance and administrative expenses, the amounts to be set aside in reserve for repair, maintenance and replacements, and vacancy and collection losses. [Citation.]

> The task of fixing rent charges is such that a tenant commissioner might be called on to vote to increase his own rent in order to amortize and service the housing authority's debt obligation. If he is reluctant to increase rents which include his own, the housing authority might fail to pay its bonded indebtedness and permit unchecked physical depreciation of the properties. Matters

on which the housing authority votes include the setting and the enforcing of its policies as to delinquent rents and the eviction of tenants. As a housing authority commissioner, a tenant would also be required to participate in voting on decisions involving the hiring and firing of housing authority personnel who deal with him and his family from day to day.

Thus, whether or not the tenant as a housing authority commissioner is in fact benefiting himself individually by his vote, his personal interests are always directly or indirectly involved in his vote on the commission." 164 Conn. 247, 252-53, 320 A.2d 820, 823.

Another statutory provision, section 3 of the Corrupt Practices Act, which relates to conflicts of interest, also bears upon the eligibility of the plaintiffs to serve as commissioners. It provides:

"No person holding any office, either by election or appointment under the laws or constitution of this state, may be in any manner interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. No such officer may represent, either as agent or otherwise, any person, association, trust or corporation, with respect to any application or bid for any contract or work in regard to which such officer may be called upon to vote. Nor may any such officer take or receive, or offer to take or receive, either directly or indirectly, any money or other thing of value as a gift or bribe or means of influencing his vote or action in his official character. Any contract made and procured in violation hereof is void." Ill. Rev. Stat. 1975, ch. 102, par. 3.

The appellate court held that this provision did not apply to tenants in the Authority since their status as tenants did not, in the court's words, "give them any interest, financial or otherwise, in the business and welfare

of parties with whom the Housing Authority may contract." (33 Ill. App. 3d 477, 482.) And the court went on to state:

"The conflict-of-interest theory is based on the fact that an individual occupying a public position uses the trust imposed upon him and the position he occupies to further his own personal gain and it is the influence he exerts in his official position to gain personally in spite of his official trust which is the evil the law seeks to eradicate." (33 Ill. App. 3d 477, 483.)

This reading of the Act is unduly narrow. Like most other conflict of interest provisions, it is aimed not only at the actual bad faith abuse of power for an officer's own personal benefit, but is also designed to prevent the creation of relationships which carry in them the potential of such abuse, by removing the possibility of temptation.

*Hoskins v. Walker* (1974), 57 Ill. 2d 503, is illustrative. There we upheld the validity of a provision of the School Code which stated:

"No member of the State Board of Education shall be gainfully employed or administratively connected with any school system or institution of higher learning, public or private, nor shall they be members of a school board or board of school trustees of a public or nonpublic school, college, university or technical institution." (Ill. Rev. Stat. 1975, ch. 122, par. 1A–2.)

Concerning this provision, we held:

"The obvious purpose to be served in limiting membership on the State Board of Education to persons not actively engaged in or connected with any school or school system is to prevent any potential conflict of interests and to prevent placing people on the Board whose other interests would naturally tend to promote or favor one segment of the State's educational structure over another. Considering the broad range of powers currently exercised by the Superintendent of

Public Instruction (Ill. Rev. Stat. 1973, ch. 122, pars. 2—3.1 to 2—3.39), and which will soon be assumed by the State Board of Education, we think the State has a legitimate interest in acting to accomplish these goals. Disqualification from Board membership of all persons associated with any school or school system is surely a reasonable method of doing this." 57 Ill. 2d 503, 509.

The plaintiffs' contention that the statutes which make them ineligible to serve as commissioners deprive them of equal protection of the law is largely disposed of by our decision in *Hoskins v. Walker.* But the plaintiffs advance the additional argument in the present case that the statutes discriminate against them because of their indigence. Under section 25 of the Housing Authorities Act (Ill. Rev. Stat. 1975, ch. 67½, par. 25), occupancy of a housing authority project is of course limited to persons of low income. It is not the plaintiffs' indigence, however, but their status as tenants which brings the conflict of interest statutes into play.

The plaintiffs point out that as tenants of a public housing authority they are the intended beneficiaries of projects developed under the Federal Low Rent Housing Act of 1937 (42 U.S.C. sec. 1401 *et seq.* (1970)), and that a declaration of policy, which appears in that act as section 1437 of title 42, now states: "No person should be barred from serving on the board of directors or similar governing body of a local public housing agency because of his tenancy in a low-income housing project." (42 U.S.C. sec. 1437 (1974 Supp.).) But a declaration of a policy, like a preamble, "is no part of the Act." (*Yazoo & Mississippi Valley R.R. Co. v. Thomas* (1889), 132 U.S. 174, 188, 33 L. Ed. 302, 308; *Bissette v. Colonial Mortgage Corp.* (D.C. Cir. 1973), 477 F.2d 1245, 1246 N.2.) "The policy section like the preamble is available for the clarification of ambiguous provisions of the statute, but may not be used for the creation of ambiguity." J. Sutherland, Statutes and

Statutory Construction secs. 20.03, 20.12, 47.04 (4th ed. 1972).

The judgment of the appellate court is accordingly reversed.

*Judgment reversed.*