**Paul E. DWYER**

v.

**CONFLICT OF INTEREST COMMISSION.**

**CONFLICT OF INTEREST COMMISSION**

v.

**John I. GOODWIN, Joanne Warfel, Robert J. Canavan, Robert M. Hashway, and Daniel T. Burns, Jr.**

Civ. A. Nos. 85–0595P, 85–0694P.

United States District Court, D. Rhode Island.

Aug. 29, 1986.

---

John H. Hines, Jr., Providence, R.I., for Dwyer.

H. Jefferson Melish, Donald G. Elbert, Jr., Conflict of Interest Com'n, Providence, R.I., for Conflict of Interest Comn.

David G. Lussier, West Warwick, R.I., Vincent J. Piccirilli, Providence, R.I., for Goodwin, Warfel, Canavan, Hashway and Burns.

## OPINION AND ORDER

PETTINE, Senior District Judge.

The Conflict of Interest Commission (CIC) has moved this Court to dissolve a preliminary injunction granted by Providence County Superior Court Judge Pederzani on October 28, 1985. This motion is opposed by plaintiffs Dwyer, Goodwin, et al. The facts of this case are set forth in the opinion and order responding to the CIC's motion to dismiss issued by this Court in August, 1986.

This Court has discretionary power to dissolve or modify preliminary injunctions issued by state courts prior to removal, *Standard Forms Co. v. Nave*, 422 F.Supp. 619 (D.C.Tenn.1976), and federal law rather than state law governs once the case is removed. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 437, 94 S.Ct. 1113, 1123, 39 L.Ed.2d 435 (1974). The standard to be applied when determining whether a preliminary injunction should issue is well-settled in this circuit:

> [i]n the First Circuit, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

*LeBeau v. Spirito*, 703 F.2d 639, 642 (1st Cir.1983) (quoting *Women's Community Health Center v. Cohen*, 477 F.Supp. 542, 544 (D.Me.1979) (citations omitted).)

## A. *Probability of Success on the Merits* [1]

Plaintiffs set forth various theories which they argue entitle them to relief, including: the equal protection and due process clause, the first and fourteenth amendment right to free speech, and various state law claims. I believe plaintiffs have demonstrated a strong likelihood of prevailing on at least a portion of their claim: that it is unconstitutional to prohibit them from serving on the school board merely because their spouse is employed as a teacher in the same district.

The constitution contains no express provision guaranteeing the right to become a candidate. Note, *Development in the Law —Elections*, 88 Harv.L.Rev. 1111, 1118 (1975); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). States are free, therefore, to create restrictions on the ability to become a candidate, but the restrictions created must not violate provisions of the Constitution. Nowak, R. Rotunda, & J. Young, *Constitutional Law* p. 643, Ch. 16(B)(1) (1978); *Storer v. Brown*, 415 U.S. 724, 728, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Bullock, supra*, 405 U.S. at 142–43, 92 S.Ct. at 855. "In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact ..." *Clements v.*

*Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982). Although "the federal Constitution does not explicitly create a right to vote, or to stand for office, or to associate in a political party ... the Supreme Court in recent years has found such rights to be implicit in various constitutional provisions." *Hall v. Simcox*, 766 F.2d 1171, 1172–73 (7th Cir.) *cert. den.,* —— U.S. ——, 106 S.Ct. 528, 88 L.Ed.2d 459 (1985).

The Supreme Court has not yet formulated a "litmus paper test for separating those ballot access restrictions that are valid from those that are invidious under the Equal Protection Clause." *Clements* 102 S.Ct. at 2843 citing *Storer* 415 U.S. at 730, 94 S.Ct. 1274. "Decision in this area of constitutional adjudication is a matter of degree, and involves a consideration of the facts and circumstances behind the laws, the interests the state seeks to protect by placing restrictions on candidacy, and the nature of the interests of those who may be burdened by the restrictions." *Clements* 102 S.Ct. at 2844 citing *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968).

The standard to be applied in these situations is unclear.[2] Some cases have sug-

---

1. In support of their motion the CIC offers several reasons why the plaintiffs cannot prevail on the merits, most of which are discussed in the text of this opinion. Two of these reasons deserve only a quick note here, however, as they are addressed more fully in the Opinion and Order issued in this case in August, 1986.

   The CIC submits that pursuant to the Rhode Island Administrative Procedures Act (the APA), R.I.G.L. § 42–35–1 et seq., this Court lacks jurisdiction. I have previously rejected that position as untenable and unfair. Mere semantics— terming the CIC's edict an "advisory opinion" or a "rule" does not determine whether review is available. In this instance plaintiffs cannot possibly exhaust until an action is brought against them and as I have previously indicated it is unjust to require them to await such action or forego public service.

   The CIC also suggests that there can be no success on the merits since Article III of the United States Constitution precludes judicial resolution of the issue at this time. As I have fully discussed this contention in the aforementioned Opinion & Order, I decline to address this issue here at all.

2. The confusion over the applicable standard is well detailed throughout *Hall v. Simcox*, 766 F.2d 1171 (7th Cir.) *cert. den.* —— U.S. ——, 106 S.Ct. 528, 88 L.Ed.2d 459 (1985), Judge Posner writing for the appellate court concludes that:

   the Court has not settled on the standard to be applied in ruling on such challenges. Some cases suggest a strict standard: the state must use "the least drastic means" of restricting access to the ballot in pursuit of legitimate state interests—must avoid "overbroad restrictions." *Id* [*Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173] at 185–86, 99 S.Ct. [983] at 990–91 [59 L.Ed.2d 230 (1979) ]; see also *Williams v. Rhodes*, 393 U.S. 23, 31, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). Other cases suggest a looser standard: "the State's important regulatory interests are generally sufficient to justify reasonable nondiscriminatory restrictions." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 1569–70, 75 L.Ed. 547 (1983). *See also, id.* at 788, n. 9, 103 S.Ct. at 1570 n. 9, and cases cited there. The uncertainty about the standard for judging such restrictions has been noted by

gested that the appropriate analysis is the traditional lower level equal protection test: whether the challenged classification is rationally related to a proper legislative purpose. *See, e.g., Clements, supra; Trafelet v. Thompson,* 594 F.2d 623 (7th Cir.1979), *cert. denied,* 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979). *See also, Shoresman v. Burgess,* 412 F.Supp. 831 (E.D.Ill.1976).[3] Other cases have apparently utilized a middle level or intermediate type of scrutiny. *See, e.g., Lubin v. Panish,* 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); *Williams v. Rhodes, supra.* "The courts may sometimes talk the language of least drastic means but they only strike down ballot-access regulations that are unreasonable, such as Ohio's 15 percent requirement in *Williams v. Rhodes.* Of course the existence of a less restrictive alternative must be relevant to an assessment of reasonableness; one way in which a requirement may be unreasonable is that it is unnecessary in light of another requirement that could be imposed instead." *Hall* at 1174. Most recently in *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), the United States Supreme Court has indicated that

> [C]onstitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any "litmus paper test" that will separate valid from invalid restrictions. *Storer, supra,* 415 U.S., at 730, 94 S.Ct., at 1279. Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify

and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

Upon weighing all of these factors in this instance, I conclude that the restriction in question is unconstitutional.

1. *Magnitude of the asserted injury* —The limited, albeit non-fundamental right to be a candidate for public office derives primarily from two fundamental interests—the right to vote effectively and the right to associate. Harvard Note at 1134; Tribe, *American Constitutional Law* § 13–19 at 775. Thus the focus is not only on the rights of plaintiffs but also on the rights of the electorate to organize and associate for the purpose of voting for these individuals. From whatever perspective First and Fourteenth Amendment rights are implicated, the restriction here is severe. The affected would-be candidates are totally and completely precluded from running for School Board office in the district in which their spouse is employed. Some of these individuals are likely to have unique insight about and dedication to crucial school system issues. The effect of the CIC "advisory opinion" however, is to divest the voters of their right to associate for the promotion of plaintiffs' candidacy and their right to elect such individuals.

2. *State justification for the burden* —The interest Rhode Island seeks to further, quite obviously, is that of promoting

---

the Fifth Circuit in *Dart v. Brown,* 717 F.2d 1491, 1501–02 (5th Cir.1983), and by several commentators. See, e.g., Tribe, American Constitutional Law 783 (1978); Case Comment, 18 Suffolk U.L.Rev. 2430 (1984). *Hall* at 1173.

**3.** This case involved substantially similar facts as the case at bar. While in *Shoresman* the court ruled against the plaintiff, the case was

decided in 1976 and the analysis used by that Court, that of irrebuttable presumption, has fallen into disfavor. The test for finding such a presumption is a very stringent one: the presumption must be arbitrary, unreasonable, and unsupported by a rational state interest. Such a showing is not required under current equal protection analysis.

and preserving the integrity of government and public officials. The State also notes its interest in regulating the ethical behavior of public officials, *see, Duplantier v. United States*, 606 F.2d 654 (5th Cir.1979), *cert. den.* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981), and the need to increase the public's confidence in public officials and to deter or decrease potential and actual conflicts of interest by state and municipal officials. These interests are unquestionably legitimate, and indeed are admirable and deserve to be promoted. The CIC was established for just such a purpose: to protect the public from state and municipal officials acting in conflict of interest.

In this instance, however, the "regulation" in its entirety does not serve to promote this policy, although portions of it do. Prohibiting individuals to serve on the school board simply because their spouse is employed as a teacher in the district does not serve the State interest of preventing potential conflicts of interest. School Board members perform a myriad of tasks, only a few of which would result in a conflict of interest between plaintiffs and their spouses. As in *Anderson v. Celebrezze, supra,* here the "advisory opinion" is imprecisely drawn—its coverage is too broad. The only conceivable governmental purpose served by totally prohibiting plaintiffs from running for office, as opposed to specifically enumerating those functions which they should not perform is that of ease and convenience. While the CIC has an interest in devising prompt and efficient procedures to achieve its legitimate objectives in this area, "the Constitution recognizes higher values than speed and efficiency". *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 646, 94 S.Ct. 791, 799, 39 L.Ed.2d 52 (1974). While it might be easier for the CIC to flatly prohibit plaintiffs from seeking office, administrative convenience alone is insufficient to make valid what is otherwise unconstitutional. The "advisory opinion" attempts to prohibit the plaintiffs from doing several things, each of which must be evaluated independently to determine its constitutionality. The restrictions encompass:

(a) seeking re-election or reappointment to the School Committee;

(b) participating in the discussion of, influencing or voting on the hiring or awarding of tenure to his/her teacher spouse;

(c) participating in the discussion of, influencing or voting on the teachers' contract or any negotiations therefor, and

(d) participating in the discussion of, influencing, or voting on any other matter affecting his or her teacher-spouse.

Quite clearly, for the reasons I have already articulated, restriction (a) must fall and thus the preliminary injunction shall remain in full force and effect as to the prohibition concerning re-election or reappointment. Perhaps just as clearly, however, restriction (b) is a valid exercise of the State's power to regulate public officials and prevent conflicts of interest. For a spouse to participate in the decision of whether to hire or award tenure to his or her mate unquestionably presents a strong conflict of interest. The preliminary injunction is dissolved on this point since the probability of plaintiffs' success on the merits here is slim. Restriction (c) would seem to me also to be valid, since a conflict of interest, while admittedly less direct than that raised in situation (b), does exist. However, plaintiffs raise a State law basis on which they might be able to prevail. While this issue has not been fully briefed by either side, it appears to me to have merit. Essentially, plaintiffs' claim is that the statute creating the CIC specifically states that discussing, participating, and voting upon teacher contract negotiations is not considered to create a conflict because the teacher spouse is not benefitted to any greater extent than any other member of the group. The applicable language reads:

[A person] does not have an interest which is in substantial conflict with the proper discharge of his duties in the public interest and of his responsibilities as prescribed by the laws of this state, if

any benefit or detriment accrues to him or his spouse (if not estranged) or any dependent child, business associate, or any business by which said person is employed or which said person represents as a member of a business, profession, occupation or group to no greater extent than any other member of such business, profession, occupation or group.

R.I.Gen.Laws § 36–14–6.

It would appear then, that the CIC has exceeded the scope of its authority, as a plain reading of the statute reveals, that no conflict of interest is created when a school committee member with a teacher-spouse participates in and votes on teacher contract negotiations. Thus, the portion of the preliminary injunction involving this School Board member function remains in effect pending a full resolution on the merits. As to restriction (d), as worded, it is too broad. Some matters may, in an exceedingly attenuated fashion affect a teacher-spouse, yet not create a conflict of interest. Other matters might affect the teacher-spouse more directly, thus posing a true conflict. This section of the preliminary injunction remains for the time being, until a more narrow rule is developed.[4]

### B. *Irreparable Harm*

Plaintiffs have clearly demonstrated that irreparable harm will occur if the injunction is not granted. Without such an injunction, they may be subject to litigation, embarrassment, and loss of position and prestige with other school committee members. That no complaints have been filed against any of the plaintiffs is irrelevant as, without a preliminary injunction, a complaint could certainly be immediately forthcoming. Indeed, such a complaint has been filed and is being adjudicated against an individual not a party to this suit.

### C. *Balancing of the Hardships*

The hardship to the plaintiffs if an injunction does not issue has already been described. The hardship to the CIC if an injunction does issue is minimal. Contrary to the CIC's contention, the entire process of issuing advisory opinions is not being disrupted. The challenge to this "advisory opinion" is being entertained because in effect it is not an advisory opinion but a rule. The debilitating barrage of lawsuits challenging advisory opinions that the CIC predicts simply will not materialize. The CIC further alleges that since final decisions in contested cases are appealable pursuant to the State APA to ensure that arbitrary decisions and errors of law are not made, there is no need for court review of advisory opinions and hence no harm to plaintiffs if an injunction is not granted. I have previously indicated that this argument must fail as it is unacceptable to make plaintiffs wait until they are charged and a final CIC decision is made that may never be forthcoming, i.e. conceivably a charge may never be brought. The balancing of hardships clearly favors the plaintiffs.

### D. *The public interest*

The public interest will not be adversely affected by the grant of a preliminary injunction. In fact, the public interest is

---

**4.** Plaintiffs offer several other grounds upon which they might ultimately prevail. While I need not discuss any of these grounds here, I would briefly note that plaintiffs might very well succeed on their state law claim that the CIC promulgated a rule in violation of the rule-making procedures of the state APA. While the CIC is empowered to issue advisory opinions, R.I.Gen.Laws § 36–14–8(10), I have already indicated that in fact what the CIC did was to issue a pre-enforcement rule, since a copy of the Opinion was sent to each potentially affected individual even though it purportedly spoke only to Dwyer's situation. While administrative agencies have the discretionary power to issue rules through adjudication or rule making, these rules must be promulgated in compliance with the conflict of interest law or the APA, neither of which was addressed here. Justice Pederzani obviously thought there was enough merit to plaintiff's argument to grant a preliminary injunction on that basis. (Preliminary Injunction hearing, 10/28/85, p. 35). Had the APA been complied with plaintiffs would have been given an opportunity to voice their position and perhaps a more tolerable, less restrictive rule would have emerged.

served by allowing the status quo to be preserved until a quick and complete adjudication on the merits can be had. Under the terms of the preliminary injunction, the school committees with plaintiffs as members can continue about their business uninterrupted without concern that one of its members fears the consequences of his actions.

The preliminary injunction remains in full force and effect but is modified in so much as it now applies to all the parties in this consolidated action; it concerns only advisory opinion 85–86 (or any other opinions relating to plaintiffs in this action); and it is dissolved as to that portion concerning the right of plaintiffs to participate in the discussion of or voting on the hiring or awarding of tenure to his/her teacher spouse.